110 N.J. Super. 571 (1970)
266 A.2d 319
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
DONALD CREVINA, DEFENDANT.
Superior Court of New Jersey, Law Division  (Criminal).
Decided May 28, 1970.
*572 Mr. Bernard B. Montalbano, Assistant Prosecutor, Passaic County, argued the motion for the State (Mr. Joseph D.J. Gourley, Prosecutor, attorney).
Mr. Anthony R. La Duca argued the motion for defendant.
JOELSON, J.S.C.
This matter comes before the court on defendant's motion to suppress evidence alleged to have been obtained as the result of an unlawful search and seizure.
The facts are not substantially in dispute as to the events leading up to defendant's arrest and his subsequent indictment on a charge of receiving stolen property in violation of N.J.S.A. 2A:139-1. On the morning of January 4, 1970 a call was received at Clifton police headquarters from a woman who identified herself as Mrs. Karen Crevina. She reported that her husband, the defendant, had been stealing merchandise from various stores over a period of several months. An appointment was made for her to come to the police station that afternoon. She arrived at the appointed hour with her mother. She was, in fact, defendant's wife.
After questioning she willingly signed a statement that her husband had been stealing merchandise from various stores since April 1969, and that on one occasion she had assisted him to do so. She further stated that the stolen merchandise was then in an apartment which she and her husband *573 shared in Clifton, and that she wished to "turn over" the stolen property to the police. After signing that statement she also signed a paper stating that she voluntarily came to the Clifton police headquarters "with information concerning the stolen clothing which is now in my apartment," and made "a request that Detectives William Vander Brink and William De Vos remove the stolen clothing from my apartment."
Thereupon the above-named detective, without obtaining a search warrant, accompanied Mrs. Crevina and her mother to the apartment. Mrs. Crevina unlocked the door and they all went in together. She then led them to the bedroom where she took numerous items from the bedroom closet and placed them on the bed to display them to the police. Many of the items still retained their price tags and consisted chiefly of men's and women's wearing apparel.
Although a police witness testified that when defendant's wife came to police headquarters on January 4, 1970 she stated that she did so because her conscience had been bothering her to the extent that she could not sleep, her husband testified at the hearing on the motion to suppress that they had a heated argument at 2 A.M. on January 4, 1970 about an alleged serious marital offense on his part. At the request of defense counsel, and with the consent of both defendant and his wife, she was also allowed to testify at the hearing. She confirmed defendant's testimony and said that her purpose in going to the police was really "to get even."
Neither party has cited a New Jersey case directly on point, but defendant has cited several cases which appear to turn on the question of the motivation of the spouse who voluntarily consents to the search of an apartment occupied jointly by husband and wife. Thus, he emphasizes People v. Carter, 48 Cal.2d 737, 746, 312 P.2d 665, 670 (Sup. Ct. 1957), in which the court stated:
When the usual amicable relations exist between husband and wife and property seized is of a kind over which the wife normally exercises as much control as the husband, it is reasonable to conclude *574 that she is in a position to consent to search and seizure of property in their home.
Defendant also stressed In re Lessard, 62 Cal.2d 497, 42 Cal. Rptr. 583, 587, 399 P.2d 39, 43 (Sup. Ct. 1965), where the court said:
In the husband's absence, the officers could reasonably conclude that the wife could properly consent to a search of the property in the home; petitioner's present allegation of an "estrangement" between them does not destroy the consent. * * *
Defendant further points to Kelley v. State, 184 Tenn. 143, 197 S.W.2d 545, 546 (1946), in which the Supreme Court of Tennessee ruled that a wife who is angry at her husband and hostile in her attitude towards him does not have "authority to waive rights." Finally, defendant cites Cofer v. United States, 37 F.2d 677 (5 Cir.1930), which holds that a wife who allowed law enforcement officials to search the home of the wife and her husband was without authority to bind her absent husband by waiving a legal warrant or consenting to an unauthorized search.
It is interesting to note that most of those cases relied on by defendant, in addition to discussing the spouse's hostility, also refer to a waiver by a wife of her husband's rights or to a consent to a search and seizure by a wife in behalf of her husband arising out of such hostility. However, this court is of the opinion that we are not here dealing with such a waiver of another's rights or a consent in behalf of another, but rather with a written consent given in the wife's own behalf as an occupant of the apartment. In that consent the wife specifically requested the police to remove the alleged stolen articles from her apartment, and accompanied them there for that purpose.
Neither counsel has cited a New Jersey precedent on this subject, but the court is of the opinion that it should consider State v. Hagan, 99 N.J. Super. 249 (App. Div. 1968). In that case it was held that when a "co-owner" of premises consents *575 to a search thereof, the fruits of the search are admissible in evidence in a criminal prosecution against his nonconsenting co-owner. Although that case did not involve a husband and wife, it must be considered as most persuasive since it dealt with a man and women living together in an apartment.
In a Rhode Island case, State v. Cairo, 74 R.I. 377, 60 A.2d 841 (Sup. Ct. 1948), a wife permitted a search of the cellar of a house and store owned jointly by herself and her husband. In upholding the validity of such search as against the husband, the court said:
Therefore, the question as to whether Mrs. Cairo could give such permission as agent of her husband, so as to bind him by her action, is not involved in this case because there is evidence that in granting permission to make the search complained of she was not acting as agent for her husband but in her own right as a joint owner and occupant of the premises. [60 A.2d at 845]
This court is of the opinion that it must give great weight to Roberts v. United States, 332 F.2d 892, 896 (8 Cir.1964). After referring to Cofer v. United States, supra, which held that the wife was without authority to bind her absent husband, the Eighth Circuit said:
We hold * * * that the right of the wife here to enter the home which was in her possession and control cannot be seriously questioned and that her invitation to and authorization to the officers to enter and search was an outgrowth thereof. It is not a question of agency, for a wife should not be held to have authority to waive her husband's constitutional rights. This is a question of the wife's own rights to authorize entry into premises where she lives and of which she had control. Additionally, the District Court's conclusion that there was nothing "unfair, unreasonable or oppressive" about the search and seizure is soundly based. There is nothing in the record to indicate that Mrs. Roberts did not give her consent voluntarily * * * [Emphasis supplied]
Although defense counsel has not raised the point in his brief, the court has also considered the relevance of N.J.S.A. 2A:84A-17(2) and N.J. Rules of Evidence, Rule *576 23(2) to this matter. That statute and the rule provided in part that "the spouse of the accused in a criminal action shall not testify in such action * * * unless such spouse and the accused shall consent." The public policy underlying the statute is to protect and encourage free and uninhibited communication and confidence between husband and wife, and to protect "the sanctity and tranquility of the marriage relationship." State v. Briley, 53 N.J. 498, 505 (1969). It undoubtedly erodes such policy to permit police to conduct a search, whether with or without a warrant, based upon one spouse's disclosure against another. However, since the statutory privilege extends only to testimony, it would be judicial legislation for the court to attempt to expand it to the factual situation found in this case.
Further, the court is not unmindful of Evidence Rule 28, of which provides that "no person shall disclose any communication made in confidence between such person and his or her spouse unless both shall consent to the disclosure." On the question as to whether Evidence Rule 28 applies herein, reference should be made to Evidence Rule 2, which deals with the scope of those rules. Evidence Rule 2(1) states that the provisions concerning "Privileges" (Evidence Rules 23 to 40) "shall apply in all cases and to all proceedings, places and inquiries, whether formal, informal, public or private, as well as to all branches of government and by whomsoever the same may be conducted, and none of said provisions shall be subject to being relaxed."
There is no doubt that Evidence Rule 2(1) is apparently very broad as to the extent of coverage concerning a privilege. However, is it so broad as to extend to this case where a wife voluntarily appeared at a police station at a time when there was no proceeding or inquiry of any kind existing against her husband? The court thinks not because a rule of evidence must be deemed to apply to some type of a proceeding or inquiry, even though it be an informal one, and there was no such proceeding or inquiry in existence in this case. If this privilege rule were to be extended to a situation such as this, *577 police could not even allow a wife in whose home, which she shares with her husband, contraband property is located, to purge herself of guilt by voluntarily reporting such fact to the police. Furthermore, if Evidence Rules 2(1) and 28 were to be thus applied, police might be foreclosed from action against a criminal merely because they listened to a voluntary statement from his spouse who implicated him by gratuitously divulging a confidential communication. In short, the Court is of the opinion that despite the fact that Evidence Rule 2(1) is broad on its face and Evidence Rule 28 refers to "disclosure," it must be remembered that these rules are part of a general subject known as New Jersey Rules of Evidence, and should therefore be applicable only to disclosure by way of evidence in the nature of testimony of a spouse as a witness.
For all the foregoing reasons, the motion to suppress is denied and the prosecutor should submit an order accordingly.