UNITED STATES of America ex rel. Gerardo CATENA, Appellant,

v.

Albert ELIAS, Superintendent of Youth Reception and Correction Center at Yardville, N. J.

No. 18855.

United States Court of Appeals, Third Circuit.

Aug. 8, 1972.

Robert L. Weinberg, William & Connolly, Washington, D. C., for appellant.

Andrew F. Phelan, Trenton, N. J., for appellee.

Before McLAUGHLIN, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal is now before this court as a result of the May 30, 1972, judgment of the Supreme Court of the United States, 406 U.S. 952, 92 S.Ct. 2056, 32 L.Ed.2d 341, that this court's judgment of September 2, 1971,[1] be reversed and that this case be remanded to this court, citing Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972).

Since the above judgment disposes of relator's contention that the New Jersey order finding him in contempt and re-

---

1. See United States ex rel. Catena v. Elias, 449 F.2d 40 (3d Cir. 1971), which explains the background of this case.

manding him to custody until such time as he answered the questions asked of him pursuant to N.J.Stat.Ann. § 52:9M–1 ff. (1970), violated the Fifth Amendment privilege against self-incrimination, there is only one remaining contention of relator which requires consideration, namely, that the statute creating the New Jersey State Commission of Investigation, both on its face and as applied to relator,[2] violates the due process clause of the Fourteenth Amendment for failure to provide minimal due process safeguards for witnesses appearing before the Commission. The following practices and procedures of the Commission form the basis of relator's challenge. The Commission is to refer evidence of crime and misconduct of public officials to the proper prosecutorial authorities,[3] and to cooperate with federal officials in the investigation of violations of federal laws within the state.[4] The Commission is to keep the public informed as to the operations of organized crime and problems of criminal law enforcement in the state, as well as to its "other activities," "[b]y such means and to such extent as it shall deem appropriate."[5] Witnesses summoned to testify before the Commission have the right to be accompanied by counsel, who shall be permitted to advise the witness of his rights, but this advisorial right is "subject to reasonable limitations to prevent obstruction of or interference with the orderly conduct of the hearing."[6] At public hearings, counsel for a witness may submit proposed questions to be asked of the witness relevant to the matters upon which the witness has been questioned, but the Commission need ask the witness only "such of the questions as it may deem appropriate to its inquiry."[7] A witness has no right to cross-examine other witnesses; and he has no right to call witnesses, although he may at the conclusion of his examination file a sworn statement relative to his testimony for incorporation into the record.[8]

In Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), the Supreme Court held that persons whose conduct is under investigation by the United States Commission on Civil Rights, a purely investigative and fact-finding governmental agency, which does not adjudicate, are not entitled, by virtue of the due process clause, to know the specific charges that are being investigated or the identity of the complainants, or to have the right to cross-examine those complainants and other witnesses. The Court reasoned that due process did not require rights such as apprisal, confrontation and cross-examination in the proceedings of the Civil Rights Commission because of the purely investigative nature of that Commission's proceedings, the burden that such rights would place on those proceedings, and the traditional procedure of investigating agencies in general. In Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), which presented a challenge to the Louisiana Labor-Management Commission of Inquiry, the Court reaffirmed its decision in *Hannah*, and elab-

2. Although relator attempts to challenge the constitutionality of the statute creating the Commission as applied to him, as well as on its face, there is no evidence in the record on which this court can base an assessment of the presence or absence of the harms decried in Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), in the application of this statute to relator or to others similarly situated. The only evidence in the record consists of the grant of immunity to relator and his refusal to testify; there is no evidence in the record regarding extra-statutory practices and procedures of the Commission. If, despite the decision of the Supreme Court of New Jersey in In re Zicarelli, 55 N.J. 249, 261 A.2d 129 (1970), relator fears unconstitutional practices similar to those decried in *Jenkins*, he may seek appropriate protective relief in the courts.

3. N.J.Stat.Ann. § 52:9M–8 (1970).

4. N.J.Stat.Ann. § 52:9M–6 (1970).

5. N.J.Stat.Ann. § 52:9M–11 (1970).

6. N.J.Stat.Ann. § 52:13E–3 (1970).

7. N.J.Stat.Ann. § 52:13E–3 (1970).

8. N.J.Stat.Ann. § 52:13E–5 (1970).

orated further on the distinction between investigative agencies and adjudicatory or accusatory agencies. The thrust of these decisions is that the requirements of due process vary with the type of proceeding involved. Fewer procedural safeguards are required by the due process clause in hearings before purely investigative agencies or agencies conducting purely investigative hearings. But when an agency is adjudicatory or accusatory in the sense that it is used to find named individuals guilty of crimes or to make similar determinations finally and directly affecting substantial personal interests, the due process clause requires the full panoply of procedural safeguards traditionally required in adjudicatory proceedings.[9] *Hannah* and *Jenkins* require us initially to determine the nature and function of the New Jersey State Commission of Investigation, and then to decide whether, in light of the nature and function of the Commission, the procedures complained of violate the due process clause of the Fourteenth Amendment.

The New Jersey statute confers on the Commission the duty and power to conduct investigations in connection with:

 a. [t]he faithful execution and effective enforcement of the laws of the State, with particular reference but not limited to organized crime and racketeering;

 b. [t]he conduct of public officers and public employees, and of officers and employees of public corporations and authorities;

 c. [a]ny matter concerning the public peace, public safety and public justice.[10]

At the direction of the Governor or by concurrent resolution of the legislature, the Commission has the duty to conduct investigations or otherwise assist in connection with:

 a. [t]he removal of public officers by the Governor;

 b. [t]he making of recommendations by the Governor to any other person or body, with respect to the removal of public officers;

 c. [t]he making of recommendations by the Governor to the Legislature with respect to changes in or additions to existing provisions of law required for the more effective enforcement of the law.[11]

In addition, at the direction or request of the legislature by concurrent resolution, or of the Governor, or of the head of any department, board, bureau, commission, authority, or other state agency, the Commission has the duty to investigate the management or affairs of such agency.[12] As noted above, the Commission also has the duty to cooperate with state and federal law enforcement officials.[13] Further, the Commission is required to make a report and recommendations to the Governor and the legislature at least once a year, and the Governor and the legislature have the explicit authority to require interim reports.[14]

■ In determining the nature and character of the Commission in *Zicarelli,* the Supreme Court of New Jersey considered these powers and duties of the Commission and held that the statute created a body the purpose of which, in the words of *Hannah* and *Jenkins,* is "to find facts which may subsequently be used as the basis for legislative and ex-

---

9. See Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951). As the Court noted in *Jenkins,* this analysis does not apply to every official body which has an accusatory function. See 395 U.S. at 430–431, 89 S.Ct. 1843. Our conclusions with respect to the nature and function of the New Jersey State Commission of In-vestigation render unnecessary an attempt to probe the limits of this exception.

10. N.J.Stat.Ann. § 52:9M–2 (1970).

11. N.J.Stat.Ann. § 52:9M–3 (1970).

12. N.J.Stat.Ann. § 52:9M–4 (1970).

13. N.J.Stat.Ann. §§ 52:9M–5 to –8 (1970).

14. N.J.Stat.Ann. § 52:9M–10 (1970).

ecutive action." [15] That court further held that the function of the Commission was "[not] to decide whether an individual has committed a crime and to publicize the verdict," [16] and emphasized that the Commission "is in no sense an 'accusatory' body." [17] While we are not bound by the resolution of the federal constitutional questions by the Supreme Court of New Jersey, we are bound by

that court's construction of the statute creating the Commission. The Supreme Court of New Jersey held that the statute created a commission with an investigative function, but not with accusatory or adjudicatory functions.[18]

 We agree with that court's application of the constitutional standards of *Hannah* and *Jenkins*.[19] Since the

15. 55 N.J. at 258, 261 A.2d at 134. *See* Jenkins v. McKeithen, 395 U.S. 411, 426, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Hannah v. Larche, 363 U.S. 420, 441, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

16. 55 N.J. at 256, 261 A.2d at 132.

17. 55 N.J. at 258, 261 A.2d at 134.

18. There is a suggestion in the opinion that the statute was construed to accommodate the constitutional requirements of *Hannah* and *Jenkins* and thereby save the Commission from constitutional interment. *See* 55 N.J. at 260, 261 A.2d at 135. Regardless of whether the statute was construed in order to avoid a difficult constitutional determination, *Zicarelli* clearly indicates that the role of the Commission is investigatory, and that the Commission is not required by statute, and indeed cannot constitutionally, make and publicize findings with respect to the guilt of specific individuals. 55 N.J. at 260, 261 A.2d at 135.

19. Two aspects of the statutory practices and procedures of the Commission initially appear to raise troubling questions about the nature and function of the Commission in light of *Jenkins*, despite the fact that *Jenkins* involved the rather extreme case of a commission "exercis-[ing] a function very much akin to making an official adjudication of criminal culpability" and "empowered to be used and allegedly . . . used to find named individuals guilty of violating the criminal laws of Louisiana and the United States and to brand them as criminals in public." 395 U.S. at 427–428, 89 S.Ct. at 1852. Upon close examination, however, it is apparent that these duties are not inconsistent with the Commission's character as an investigative body.

First is the Commission's statutory mandate to refer evidence of crime and misconduct of public officials to the proper prosecutorial authorities, to cooperate with law enforcement officials, and to cooperate with federal officials in the investigation of violations of federal laws within the State of New Jersey. See N.J.

Stat.Ann. §§ 52:9M–5, –6, –8 (1970). Although the United States Commission on Civil Rights did not have a similar statutory mandate, its 1959 Annual Report, which was a part of the record before the Court in *Hannah*, indicates that the transcript of all its hearings, at which violations of state and federal laws were probed, were printed and made available to the public generally. 1959 U.S.Civ. Rights Comm'n Ann.Rep. v, xiv. And the three-judge district court had noted in its opinion in that case that:

42 U.S.C.A. § 1975c(b) requires the Commission to submit to the President a final and comprehensive report of its findings. Since the Commission is required to make this report to the President, the Chief Executive Officer of the land, it is fair to presume that a prime purpose of this report is to secure execution and enforcement of the laws presently in effect.

Larche v. Hannah, 177 F.Supp. 816, 823 n. 16 (W.D.La.1959) (three-judge court).

In addition to the fact that evidence of crime was made available to prosecutorial authorities by the United States Commission on Civil Rights, it is clear from other decisions of the Court that such a practice is not inconsistent with an investigative character. In Anonymous Nos. 6 and 7 v. Baker, 360 U.S. 287, 79 S.Ct. 1157, 3 L. Ed.2d 1234 (1959), the Court upheld, on the ground that it was an investigative proceeding, the constitutionality of a state judicial inquiry into alleged improper practices at the local bar, from which inquiry counsel for witnesses were excluded, despite the fact that the justices could refer the matter to the district attorney for prosecution, in which event the records of the proceeding would be deemed public records. In In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957), the Court upheld, on the ground that it was an investigative proceeding, an inquiry by the Ohio State Fire Marshal into the causes of a fire while excluding counsel of subpoenaed witnesses on whose premises the fire had occurred,

Commission has a purely investigative character and purpose, the due process clause does not require the full panoply of judicial procedures in hearings before the Commission. We conclude that the procedures of the Commission, which so closely parallel the procedures of the Civil Rights Commission upheld in *Hannah*,[20] comport with the requirements of due process.[21]

■ Relator alleges that he is confined pursuant to an order of the Superior Court of New Jersey which directs that he remain incarcerated until he purges himself of contempt by answering the propounded questions. He argues that the failure otherwise to provide an expiration date for the incarceration violates the cruel and unusual punishment clause of the Eighth Amendment, which the decision in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), clearly indicates is made binding on the states by the Fourteenth Amendment. We have doubts that this issue is ripe for adjudication. By seeking a writ of habeas corpus in the district court, relator sought to have his federal constitutional claims adjudicated in a federal forum. This has now been accomplished. Under these circumstances, relator may now decide to purge himself of contempt by answering the propounded questions. In any event, relator has not exhausted his state remedies on this question.[22]

We have examined the other contentions made by relator, and conclude that they are without merit.

The opinion is filed in support of this court's order of July 26, 1972, affirming the March 20, 1970, district court order denying relator's petition for a writ of habeas corpus.

## APPENDIX

Relator objects to six procedures employed by the New Jersey Commission.

---

despite the fact that the Fire Marshal had authority, after questioning a witness, to arrest him if he believed there was sufficient evidence to charge him with arson. The precedential value of *Anonymous* and *Groban* was not affected by *Hannah*. See Hannah v. Larche, 363 U.S. 420, 451 n. 31, 491, 493, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). Regardless, the concern surrounding grants of immunity and the scope thereof is based in part on the assumption that the compelled evidence will fall into the hands of the prosecutorial authorities and thereby jeopardize the witness.

The second aspect of the Commission's mandate that is initially troublesome is its duty, "[b]y such means and to such extent as it shall deem appropriate," to "keep the public informed as to the operations of organized crime, problems of criminal law enforcement in the State and other activities of the commission." N.J. Stat.Ann. § 52:9M–11 (1970). The Supreme Court of New Jersey made clear in *Zicarelli* that this mandated a general program of public education on "the state of affairs in a criminal area, to the end that helpful legislation may be proposed and receive needed public support," and emphasized that the Commission could not "make and publicize findings with respect to the guilt of specific individuals." 55 N.J. at 260, 261 A.2d at 135. In undertaking a broad program of public educa-

tion, this Commission will strongly resemble the United States Commission on Civil Rights. *See, e. g.*, 1959 U.S.Civ. Rights Comm'n Ann.Rep. ix; Rule 3(k) of the Commission's Rules of Procedure (permitting the televising of hearings before the United States Commission on Civil Rights and assuring other communications media access to the hearings).

20. For a comparison, see the appendix to this opinion.

21. Once the purely investigative character of a commission is established, fine distinctions in the type of procedures involved do not make significant constitutional differences.

22. *See* 28 U.S.C. § 2254(b)—(c) (Supp. IV, 1969), amending 28 U.S.C. § 2254 (1964). Relator has not demonstrated that application to the state courts for relief would be futile. The very recent affirmance of the decision of the Supreme Court of New Jersey in In re Zicarelli, 55 N.J. 249, 261 A.2d 129 (1970), rendered exhaustion of state remedies unnecessary only with respect to the questions decided in that case, and the court in *Zicarelli* did not resolve the cruel and unusual punishment question. See Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972).

The following comparison of the challenged procedures to the procedures employed by Civil Rights Commission at the time of the decision in *Hannah* reveals their similarity.

1. Witnesses summoned to appear before the New Jersey Commission have the right to be accompanied by counsel, "who shall be permitted to advise the witness of his rights, subject to reasonable limitations to prevent obstruction of or interference with the orderly conduct of the hearing." N.J.Stat.Ann. § 52:13E–3 (1970). Likewise, witnesses summoned before the Civil Rights Commission had the right to be "accompanied by their own counsel for the purpose of advising them concerning their constitutional rights." 42 U.S.C. § 1975a(c). As in the case of the New Jersey Commission, this right was subject to reasonable limitations, for the chairman could "punish breaches of order and decorum and unprofessional ethics on the part of counsel, by censure and exclusion from the hearings." 42 U.S.C. § 1975a(d).

2. Counsel for any witness who testifies at a public hearing of the New Jersey Commission may submit proposed questions to be asked of the witness relevant to matters upon which the witness has been questioned, and the Commission "shall ask the witness such of the questions as it may deem appropriate to its inquiry." N.J.Stat.Ann. § 52:13E–3 (1970). The rules of procedure of the Civil Rights Commission did not assure a witness that his counsel had the right to submit proposed questions to be asked of the witness, but its rules did make clear that all "[i]nterrogation of witnesses at hearings shall be conducted only by members of the Commission or by authorized staff personnel." Rule 3(i) of the Commission's Rules of Procedure.

3. Counsel for persons who might be adversely affected by testimony given at a public hearing of the New Jersey Commission do not have the right to cross-examine adverse witnesses. An identical rule prevailed with respect to

hearings before the Civil Rights Commission. *See* Hannah v. Larche, 363 U. S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Rule 3(i) of the Commission's Rules of Procedure.

4. The procedures of the New Jersey Commission do not afford persons who believe that they may be or were adversely affected by evidence given before the Commission the right to call witnesses on their behalf. The rules of the New Jersey Commission do provide, however, that "[n]othing in this act shall be construed to prevent [the Commission] from granting to witnesses appearing before it, or to persons who claim to be adversely affected by testimony or other evidence adduced before it, such further rights and privileges as it may determine." N.J.Stat.Ann. § 52:13E–7 (1970). The procedures of the Civil Rights Commission likewise did not grant to persons who believed that they might be or were adversely affected by evidence given before the Commission the right to call witnesses on their behalf, but the rules did provide that "the Chairman shall receive and the Commission shall dispose of requests to subpena additional witnesses." 42 U.S. C. § 1975a(f).

5. Witnesses who testify before the New Jersey Commission "have the right at the conclusion of [the] examination to file a brief sworn statement relevant to [the witness'] testimony for incorporation in the record of the investigatory proceeding." N.J.Stat.Ann. § 52:13E–5 (1970). Witnesses who testified before the Civil Rights Commission could "[i]n the discretion of the Commission, . . . submit brief and pertinent sworn statements in writing for inclusion in the record," with the Commission serving as "the sole judge of the pertinency of testimony and evidence adduced at its hearings." 42 U.S.C. § 1975a(h). Once the Civil Rights Commission exercised its discretion to grant permission to submit such statements, inclusion of the statement in the record was not automatic, for the Commission also had the power to "decide whether

written statements or documents submitted to it shall be placed in the record of the hearing." Rule 3(h) of the Commission's Rules of Procedure.

6. The rules of the New Jersey Commission provide that:

[a]ny person whose name is mentioned or who is specifically identified and who believes that testimony or other evidence given at a public hearing or comment made by any member of the [Commission] or its counsel at such a hearing tends to defame him or otherwise adversely affect his reputation shall have the right, either to appear personally before the agency and testify in his own behalf as to matters relevant to the testimony or other evidence complained of, or in the alternative at the opinion of the agency, to file a statement of facts under oath relating solely to matters relevant to the testimony or other evidence complained of, which statement shall be incorporated in the record of the investigatory proceeding.

N.J.Stat.Ann. § 52:13E–6 (1970).

This rule confers on persons who in their own judgment feel that they have been adversely affected by evidence given before the Commission, or by comment made by a member of the Commission or its counsel, an absolute right at minimum to file a statement which shall be incorporated in the record. The rules of the Civil Rights Commission provided that:

[i]f the Commission determines that evidence or testimony at any hearing may tend to defame, degrade, or incriminate any person, it shall (1) receive such evidence or testimony in executive session; (2) afford such person an opportunity voluntarily to appear as a witness; and (3) receive and dispose of requests from such person to subpena additional witnesses.

42 U.S.C. § 1975a(e).

The rights conferred by this rule were conferred only in the event that the Commission determined that evidence might tend to be defamatory, degrading, or incriminating.

Another significant procedure of the New Jersey Commission, apparently not challenged by the relator, requires that a copy of the rules of procedure of the Commission and a general statement of the subject of the investigation be served on witnesses prior to the time they are required to appear. N.J.Stat. Ann. § 52:13E–2 (1970). In proceedings before the Civil Rights Commission, the subject of the hearing need not have been announced until the opening of the hearing, and there was no requirement that the rules of the Commission be made available to witnesses in advance of the hearing date. See 42 U.S.C. § 1975 a(a)—(b).