FREEMAN & BASS, P. A., et al.,
Appellees,

v.

STATE OF NEW JERSEY COMMIS-
SION OF INVESTIGATION
et al., Appellants.

No. 73–1405.

United States Court of Appeals,
Third Circuit.

Argued July 9, 1973.

Reargued Sept. 7, 1973.

Decided Oct. 1, 1973.

Martin G. Holleran, Executive Direc-
tor, State of N. J. Commission of In-
vestigation, Ronald S. Diana, Trenton,
N. J., for appellants.

Lewis M. Steel, Eisner, Levy & Steel,
New York City, and Roger A. Lowen-
stein, Newark, N. J., for appellees.

Argued July 9, 1973

Before VAN DUSEN and HUNTER,
Circuit Judges.

Reargued Sept. 7, 1973

Before VAN DUSEN, ADAMS and
HUNTER, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

Appellant, the State of New Jersey Commission of Investigation (hereinafter "SCI") appeals, pursuant to 28 U.S.C. § 1292(a)(1), from an interlocutory order entered by the district court on May 14, 1973,[1] restraining the SCI from referring by name to appellees and others during public hearings conducted by the SCI in its investigation of possible abusive practices and procedures in the New Jersey Workmen's Compensation program.

This appeal arises out of appellees' civil rights suit under 42 U.S.C. § 1983[2] charging the SCI, among other things, with having conducted an unconstitutionally broad investigation for the purpose of harassing and intimidating appellees and their clients, resulting in serious impairment of appellees' professional reputation as well as deprivation of appellees' right to petition for the redress of grievances on behalf of their clients.

The Supreme Court of New Jersey in 1969 and this court in 1972 had occasion to examine the nature and function of the SCI and to assess the constitutional sufficiency of the procedural safeguards it accords those whom it investigates. *Zicarelli v. New Jersey State Commission of Investigation,* 55 N.J. 249, 261 A.2d 129 (1969); *United States ex rel. Catena v. Elias,* 465 F.2d 765 (3d Cir. 1972). In *Zicarelli,* the Supreme Court of New Jersey, after reviewing the enabling legislation,[3] held that the statute created a commission with investigatory powers "to the end that helpful legislation may be proposed and receive needed public support."[4] Furthermore, the court stressed that the SCI "is in no sense an 'accusatory' body" and is not empowered "to make and publicize findings with respect to the guilt of specific individuals."[5] Thus, it was because of this essentially investigatory character of the SCI that we held in *Catena* that the statutorily prescribed procedures of the SCI, while not providing for the full panoply of procedures

---

1. The order of the district court provides:

    1. That there being no legislative purpose served in divulging the name of Freeman-Bass in public hearings, the law firm of Freeman & Bass shall not be mentioned either directly or indirectly in the public hearings presently being conducted by defendants; and it is Further Ordered

    2. Where there is no legislative purpose served in divulging the name of individuals or associations in public SCI hearings in connection with alleged improper or criminal activities of any individuals or firms, the names of such individuals shall not be mentioned in public hearings of the SCI.

    Legislative purpose in divulging names of individuals or associations in connection with improper activities is found to be lacking in all cases where:

    (a) The witness called at a public hearing has already testified at a private hearing or has given information to the commission and no new matter is sought to be elicited at the public hearing;

    (b) employees or members of the commission testify as to names of individuals mentioned in connection with alleged abuses; and it is Further Ordered

    3. That two weeks notice shall be given to the firm of Freeman & Bass in the event

that they are to be mentioned in any public report; and it is Further Ordered

    4. That the requested release of the full testimony of Marion Kingsberry and Flora Ware be denied until such time that the court is assured by independent counsel for these witnesses that they desire their testimony to be released, and it is Further Ordered

    5. That all documents previously held under seal except for the depositions, the notice of motion to compel answers to said depositions and the minutes of April 9, 1973 are hereby unsealed.

2. 42 U.S.C. § 1983 provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. N.J.Stat.Ann. § 52:9M–1 et seq. (1970).

4. 55 N.J. at 261, 261 A.2d at 135.

5. 55 N.J. at 258, 260, 261 A.2d at 134, 135.

accorded a criminal defendant, comports with due process as that concept was interpreted in Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

■ In view of *Catena,* which we reaffirm, we disagree with the apparent position of the district court that due process requires that any individual referred to adversely in SCI hearings must remain anonymous so long as no legislative purpose can be shown for divulging his name. As noted in *Catena,* any person who feels adversely affected by evidence submitted at a public hearing, has at minimum an absolute right under the rules of the SCI to file a personal statement for incorporation into the record.[6] Moreover, merely because evidence received by the SCI at public hearings may adversely affect certain individuals, may disclose wrongdoing or may be used in a criminal prosecution, neither alters the essentially investigatory nature of the SCI nor requires judicial imposition of anonymity of those being investigated. Doe v. McMillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); Hannah v. Larche, 363 U.S. 420, 443, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Sinclair v. United States, 279 U.S. 263, 295, 49 S.Ct. 268, 73 L.Ed. 692 (1929); McGrain v. Daugherty, 273 U.S. 135, 179–180, 47 S.Ct. 319, 71 L.Ed. 580 (1927). *Cf.* Anonymous v. Baker, 360 U.S. 287, 79 S.Ct. 1157, 3 L.Ed.2d 1234 (1959); In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957). Nor does it offend due process for the New Jersey legislature to empower the SCI Commissioners to determine whether testimony received in executive session should be heard at a public hearing.[7]

Insomuch therefore as the order of the district court applies to the adverse public reference to named individuals not parties to this action, it is without basis in law.

As to appellees, Freeman and Bass, however, we are keenly aware that in any investigation of this kind there is potential for abuse and harm to one's reputation, since the informing function of a commission presupposes the possibility of its uncovering improprieties, abuses or wrongdoing. Few commissions such as the SCI would be established if there were not reason to believe that state programs have been functioning inadequately or improperly. The very purpose of the SCI is to ascertain the state of affairs in New Jersey's Workmen's Compensation program to the end that the public and the legislature might be awakened to possible needs for reform. The resulting conflict between private rights and the public interest is precisely what confronted the Supreme Court in *Hannah* and again in Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), where the Court, while reaffirming *Hannah,* held that when an inquiry goes beyond an investigation in aid of a valid legislative function and becomes "accusatory" in nature, due process requires certain procedural safeguards.

■ Conceivably, a commission such as the SCI might conduct its inquiry vis-a-vis an individual or association in bad faith with the purpose of harassment and of ultimately making and pub-

---

6. N.J.Stat.Ann. § 52:13E–6 (1970) provides:
   "Any person whose name is mentioned or who is specifically identified and who believes that testimony or other evidence given at a public hearing or comment made by any member of the [Commission] or its counsel at such a hearing tends to defame him or otherwise adversely affect his reputation shall have the right, either to appear personally before the agency and testify in his own behalf as to matters relevant to the testimony or other evidence complained of, or in the alternative at the option of the agency, to file a statement of facts under oath relating solely to matters relevant to the testimony or other evidence complained of, which statement shall be incorporated in the record of the investigatory proceeding."

7. *See Hannah* where the procedures of the Civil Rights Commission, upheld by the Court, included the right of a majority of the Commissioners to authorize the public disclosure of evidence received in executive session. 363 U.S. at 432, 433, n. 12, 80 S.Ct. 1502.

licizing findings with respect to the guilt of such individual in transgression of its statutory mandate and in violation of 42 U.S.C. § 1983. In such event, a court is not without power to protect a person whose civil rights are being violated. *Jenkins, supra.*

■ On the record before us, however, it is difficult to discern the basis for the district court's order of May 14, 1973. In numerous colloquies before the bench with counsel for appellants, the district court sought in vain to be persuaded of a legislative purpose for allowing adverse public disclosures with respect to named individuals. Yet a court must first focus its inquiry on whether the SCI has transgressed its investigatory function and become accusatory [8] and then shape its relief in response to what due process requires.[9]

Although appellees have alleged several incidents from which the district court may have concluded that the inquiry had been transformed into an accusatory proceedings against appellees, no findings of fact and conclusions of law were made in support of its order as required under Fed.R.Civ.P. 52(a) and [10] 65(d). Nor did either party present any testimony or evidence on this critical issue on either May 14 or May 22, when appellant's motion for a stay of the order was denied.

■ It is true that the district court, on April 9, 1973, characterized certain actions by the SCI as "Gestapo-like tactics" [11] and on May 22 alluded to "witch-hunting" [12] by the SCI. Moreover, the district court on May 22 very carefully and quite properly provided both parties the opportunity to adduce any evidence in their support.[13] Though neither party availed themselves of this opportunity, we nevertheless cannot justify continuance of the order without a more sufficient record [14] to support a showing of irreparable harm and probability of success and without the clarity afforded by specific findings.

---

8. Whether the practice of the SCI in permitting at public hearings adverse references to named individuals in *some* evidence that the inquiry has become accusatory, we do not decide. We merely emphasize that, standing alone, such a practice is not inconsistent with the investigatory function of the SCI. *See* Zicarelli v. New Jersey State Commission of Investigation, 55 N.J. at 258–261, 261 A.2d at 134–135.

9. *See* Jenkins v. McKeithen, 395 U.S. at 430, 89 S.Ct. 1843.

10. Rule 52 of the Federal Rules of Civil Procedure provides, inter alia:
    "In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon . . . ; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action."
    The Notes of the Advisory Committee on this Rule when it was enacted stated:
    "The rule stated in the third sentence of Subdivision (a) accords with the decisions on the scope of the review in modern federal equity practice. It is applicable to all classes of findings in cases tried without a jury whether the finding is of a fact concerning which there was conflict of testi-

mony, or of a fact deduced or inferred from uncontradicted testimony."
The Advisory Committee on the 1946 Amendment of the Rules stated:
    "Findings of fact aid in the process of judgment and in defining for future cases the precise limitations of the issues and the determination thereon. Thus they not only aid the appellate court on review, but they are an important factor in the proper application of the doctrines of res judicata and estoppel by judgment. These findings should represent the judge's own determination and not the long, often argumentative statements of successful counsel. Consequently, they should be a part of the judge's opinion and decision, either stated therein or stated separately." [Citations omitted.]

11. Official Transcript of the Proceedings of April 9, 1973, at 28.

12. Official Transcript of the Proceedings of May 22, 1973, at 31.

13. Official Transcript of the Proceedings of May 22, 1973, at 8.

14. We believe the district court should receive testimony with respect to the alleged incidents relied upon by Freeman & Bass in support of the charge that the SCI was conducting its investigation in an accusatory fashion. *Cf.* Warner Bros. Pictures v. Gittone, 110 F.2d 292 (3d Cir. 1940).

Paragraphs 1, 2, and 3 of the order of the district court of May 14, 1973 will be vacated, and the cause remanded for further proceedings not inconsistent with this opinion. Insofar as paragraphs 4 and 5 are concerned, the appeal is moot.