188 N.J. Super. 61 (1983)
455 A.2d 1151
IN THE MATTER OF ANN VITABILE AND STEPHANIE LARASSO, CHARGED WITH CIVIL CONTEMPT OF THE STATE COMMISSION OF INVESTIGATION.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1983.
Decided January 25, 1983.
*62 Before Judges MATTHEWS, ANTELL and FRANCIS.
G. Dolph Corradino argued the cause for appellants Vitabile and LaRasso (Leibowitz and Corradino, attorneys).
James A. Hart, counsel to the State of New Jersey Commission of Investigation, argued the cause for respondent State Commission of Investigation.
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Appellants appeal from an order prohibiting them from invoking the privilege granted to the spouse of an accused under *63 Evid.R. 23(2) in proceedings before the State Commission of Investigation. They argue that the court erred in determining that the privilege did not apply to proceedings before the Commission.
On October 20, 1981 appellants Ann Vitabile and Stephanie LaRasso were served with subpoenas ad testificandum and duces tecum directing them to appear before the State Commission of Investigation with certain records in connection with the Commission's investigation. The subpoena indicated the nature of the investigation as:
Whether the laws of the State of New Jersey are being faithfully executed and effectively enforced with particular reference to organized crime and racketeering; the effect of organized crime and racketeering as it relates to the State of New Jersey with specific reference to the County of Union, New Jersey, particularly relating to the organized crime family of Simone Rizzo DeCavalcante/John [illegible] and the apparent change in leadership of said family and the relationship that said family maintains with other known organized crime families from New Jersey and other states including states that border New Jersey which have an impact on the social, economic, political and business life of the State of New Jersey and particularly Union County.
According to the certification of Ann Vitabile, her husband had been under a subpoena from the Commission for the past three years and has not been released from that subpoena. Stephanie LaRasso asserted in her certification that her husband had been under a similar outstanding subpoena for the past ten years and that he had appeared before the Commission pursuant to that subpoena. Moreover, she asserted that her husband had received a document indicating that he was a target of an investigation concerning the offenses of promoting gambling, receiving stolen property, bringing stolen property into the State of New Jersey, and conspiracy to commit these offenses. She apparently refers to the notice that an order had been entered granting New Jersey State Police authority to intercept the wire communications of her husband as well as others engaged in committing the specified offenses.
Appellants appeared before the Commission on November 12, 1981 with most of the items specified in the subpoenas. However, *64 both witnesses refused to respond to a number of questions, invoking the privileges of Evid.R. 23(2) (spouse of an accused in a criminal action) and Evid.R. 28 (marital privilege  confidential communications).
On November 19, 1981, on the basis of a petition by the Commission, Judge Lenox issued an order to show cause why appellants should not be ordered to answer responsively questions posed by the Commission. The matter was heard on December 7, 1981.
In his oral opinion rendered on that date the judge noted that the husbands of appellants had been under open-ended subpoenas and that Louis LaRasso had been notified of the interception of his telephone communications. The judge stated, however, that there had been no evidence that the electronic surveillance was related to the Commission's investigation.
The judge ruled that due process in the context of a Commission hearing did not require that appellants be entitled to invoke the privileges provided under the Rules of Evidence. His reasoning is found in the following portion of his quotation from Hannah v. Larche, 363 U.S. 420, 442-443, 80 S.Ct. 1502, 1514-1515, 4 L.Ed.2d 1307 (1960):
It is probably sufficient merely to indicate that the rights claimed by respondents are normally associated only with adjudicatory proceedings, and that since the Commission does not adjudicate, it need not be bound by adjudicatory procedures. Yet, the respondents contend, and the court below implied, that such procedures are required since the Commission's proceedings might irreparably harm those being investigated by subjecting them to public opprobrium and scorn, the distinct likelihood of losing their jobs, and the possibility of criminal prosecutions. That any of these consequences will result is purely conjectural. There is nothing in the record to indicate that such will be the case or that past Commission hearings have had any harmful effect upon witnesses appearing before the Commission. However, even if such collateral consequences were to flow from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function.
In response to the argument that the proceedings conducted by the Commission were criminal and accusatory in nature, particularly in view of the statutory requirement that the Commission forward evidence of criminal activity to the attention of *65 the Attorney General, Judge Lenox cited In re Zicarelli, 55 N.J. 249 (1970), aff'd sub nom. Zicarelli v. Investigation Commission, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972), in which the New Jersey Supreme Court specifically held that the Commission's role was not accusatory. He further found that the fact that the Commission's investigation may have focused on appellants' husbands did not affect the investigatory nature of its proceedings.
He held that by its language Evid.R. 23(2) was applicable only to the spouse of an "accused" in a "criminal action." He acknowledged that Evid.R. 2(1) rendered the privilege rules applicable to all proceedings, including those conducted by the Commission, but reasoned that "they can be applicable only to the extent that by their language the privilege rules are appropriate for such application." Since appellants' husbands were not "accused" by the Commission and its proceedings could not be considered a criminal action in view of the Commission's investigative function, the privilege of Evid.R. 23(2) could not be invoked in such proceedings.
The judge further noted the policy favoring the competency of a witness rather than incompetency. He concluded that, in the absence of legislative direction, a court could not extend the application of the privilege to proceedings before the Commission. The judge ruled, however, that appellants were entitled to invoke the confidential communications privilege of Evid.R. 28.
Although he ruled against appellants with respect to their ability to claim the privilege of Evid.R. 23(2) before the Commission, the judge cautioned the Commission:
I would like to note that perhaps the Commission should reconsider the advisability of exhaustively questioning the spouses of persons who may subsequently be the subject of criminal proceedings without prior consultation with the Attorney General. I say this because there is logic and also some authority to support the conclusion that such evidence and the fruits thereof may not be used in a subsequent proceeding against the husband. See: 81 Am.Jur.2d, Witnesses, Section 112.
Evid.R. 23(2) provides:
The spouse of the accused in a criminal action shall not testify in such action except to prove the fact of marriage unless (a) such spouse and the accused shall *66 both consent, or (b) the accused is charged with an offense against the spouse, a child of the accused or of the spouse, or a child to whom the accused or the spouse stands in the place of a parent, or (c) such spouse is the complainant.
As the Commission points out, by its terms the rule grants the privilege not to testify only to the spouse of an "accused" in a "criminal action." Appellants contend, however, that an analysis of the purpose and history of the rule suggests that it was intended to have as broad an application as possible. To the contrary, we believe the present tendency, as expressed in the more modern opinions, is to narrow rather than broaden the scope of the rule. For example, in State v. Briley, 53 N.J. 498, 509 (1969), the court construed the rule to hold that a wife was competent to testify against her husband regarding an entire criminal episode where she was only one of the victims. In so deciding the court noted the following policy:
Since rigid adherence to the letter of the privileges promotes the suppression of truth, they should be construed and applied in sensible accommodation to the aim of a just result. In view of the obvious policy of the law to enlarge the domain of competency of witnesses and to adapt rules of evidence to the successful development of the truth, competency should be regarded as the rule and incompetency as the exception. This approach is plainly applicable to the so-called marital privilege. [Citations omitted]. It follows therefore that when a greater public interest is served by recognizing the competency of one spouse to testify against the other and no violence is done to the privilege as expressed in a statutory or judicial rule of evidence, the testimony should be received. [at 506]
In Trammel v. United States, 445 U.S. 40, 43-44, 100 S.Ct. 906, 908-909, 63 L.Ed.2d 186 (1980), the court explained that the original justification for the incompetency of a wife to testify against her husband was the ancient principle that a defendant could not testify in his own behalf, and since husband and wife were considered one, that that one was the husband, neither husband nor wife was competent to testify. However, the rule of one spouse being disqualified to testify against the other remained in most jurisdictions long after the concept of spousal unity had been abandoned. 445 U.S. at 44, 52, 100 S.Ct. at 909, 913. The more modern justification for what is now considered a privilege "is its perceived role in fostering the harmony and sanctity of the marriage relationship." Id. at 44, 100 S.Ct. at 909. Nevertheless, the rule continued to be criticized, and while *67 the court in Trammel decided not to abandon the entire rule, it modified the existing federal rule to allow only the witness spouse to invoke it rather than permitting the accused spouse to prevent the other's testimony. Id. at 43-53, 100 S.Ct. at 908-913.
In further support of their position that application of the privilege should not be narrowly confined to criminal trials and grand jury investigations, appellants cite Evid.R. 2(1) which provides:
The provisions of article II [Chapter V of the Rules], Privileges, shall apply in all cases and to all proceedings, places and inquiries, whether formal, informal, public or private, as well as to all branches of government and by whomsoever the same may be conducted, and none of said provisions shall be subject to being relaxed.
While the broad language of this rule would seem to suggest that the marital privilege applies to any type of proceeding, Judge Lenox reasoned that Evid.R. 2(1) can only render a privilege rule applicable to a proceeding to the extent that the language of the specific rule permits such application. This conclusion is supported by contrasting Evid.R. 23(2) with Evid.R. 28, which relates to confidential marital communications and contains no language limiting its applicability to criminal actions. As stated in the comment to Evid.R. 28:
Rule 28 applies to all types of proceedings (Rule 2(1)), while Rule 23(2) is limited to merely criminal actions. Thus, in any type of action other than a criminal proceeding, a spouse may testify against the interest of the other party to the marriage, except that absent some exception to Rule 28, consent, or waiver (Rule 37), one spouse may not divulge confidential marital communications. [citation omitted] [Evid.R. 28 (Anno. 1982), comment]
Appellants essentially concede that Evid.R. 2(1) should not be applied literally and that the language in Evid.R. 23(2) "may limit what is expressed in Rule 2(1) to some slight degree." Hence, they admit that the privilege would not apply "to a contract action which has no criminal overtones," but contend that "whenever the action to which the privilege originally applies may result in the State obtaining incriminating evidence, the privilege must apply if it is to achieve the objective for which it was enacted." However, we do not think the marital *68 privilege can be interpreted so broadly. As noted by the court in Trammel v. United States, supra, 445 U.S. at 52, n. 12, 100 S.Ct. at 913, n. 12, no privilege "prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited."
This analysis is supported by State v. Crevina, 110 N.J. Super. 571 (Law Div. 1970), aff'd 119 N.J. Super. 50 (App.Div. 1972), certif. den. 60 N.J. 511 (1972). In that case a wife contacted the police and signed a statement that her husband had stolen merchandise which was presently in their apartment, and she consented to a search of that apartment. Although the court recognized that allowing police to conduct a search based on one spouse's disclosure concerning the other undermined the policy behind Evid.R. 23(2) of protecting "`the sanctity and tranquility of the marriage relationship,'" (citation omitted), it held that "since the statutory privilege extends only to testimony, it would be judicial legislation for the court to attempt to expand it to the factual situation found in this case." 110 N.J. Super. at 576. Appellants believe that the decision in Crevina is favorable to them because of the court's statement that "a rule of evidence must be deemed to apply to some type of a proceeding or inquiry, even though it be an informal one, and there was no such proceeding or inquiry in existence in this case," id. However, in making this statement the court was considering the applicability of Evid.R. 28 in light of Evid.R. 2(1), and even though, as previously mentioned, Evid.R. 28 has broader application than Evid.R. 23(2), the court concluded:
In short, the court is of the opinion that despite the fact that Evidence Rule 2(1) is broad on its face and Evidence Rule 28 refers to "disclosure," it must be remembered that these rules are part of a general subject known as New Jersey Rules of Evidence, and should therefore be applicable only to disclosure by way of evidence in the nature of testimony of a spouse as a witness. [110 N.J. Super. at 577]
Hence, we conclude that Evid.R. 23(2) was intended to apply only in a criminal action to the spouse of one who could be considered an accused.
*69 Appellants argue, however, that a Commission hearing constitutes a criminal proceeding for purposes of rendering Evid.R. 23(2) applicable, to the extent that evidence obtained at such hearing may lead to criminal prosecution of appellants' husbands. They assert that the hearing contains all the characteristics of a criminal trial or a grand jury investigation since, among other features, witnesses have a right to counsel, may be granted immunity, and can invoke their Fifth Amendment privilege against self-incrimination, N.J.S.A. 52:9M-12.1; N.J.S.A. 52:9M-17; In re Ippolito, 75 N.J. 435, 440 (1978). Appellants particularly stress the impact of N.J.S.A. 52:9M-8, which provides, in pertinent part:
Whenever the commission or any employee of the commission obtains any information or evidence of a reasonable possibility of criminal wrongdoing, or it shall appear to the commission that there is cause for the prosecution for a crime, or for the removal of a public officer for misconduct, the information or evidence of such crime or misconduct shall be called to the attention of the Attorney General as soon as practicable by the commission, unless the commission shall, by majority vote, determine that special circumstances exist which require the delay in transmittal of the information or evidence.
In Hannah v. Larche, supra, 363 U.S. at 421-422, 80 S.Ct. at 1504-1505, the court considered the validity of procedures established by the Commission on Civil Rights which did not require the names of persons submitting complaints to be disclosed and did not allow witnesses who were the subjects of the complaints to cross-examine other witnesses. In explaining the boundaries of due process the court said:
Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account. [at 442, 80 S.Ct. at 1514]
The court concluded that the Commission on Civil Rights was a purely investigative body and, as such, it did not have to confer the claimed rights upon the witnesses before it. Ibid.
In In re Zicarelli, supra, 55 N.J. at 256, our Supreme Court was faced with a similar contention that the State Commission of *70 Investigation violated due process because witnesses were not granted the protections of the Bill of Rights. Upon consideration of the statute creating the Commission, in which its powers and duties are specified, N.J.S.A. 52:9M-1 et seq., the court concluded:
In sum, then, we have a typical commission created to discover and to publicize the state of affairs in a criminal area, to the end that helpful legislation may be proposed and receive needed public support. That the commission may also aid law enforcement by gathering evidence of crime and transmitting it to the appropriate agency for evaluation or prosecution does not militate against the power of the Legislature to seek the facts for its own purposes through such a commission. We do not suggest that a commission whose role was solely to aid the executive branch by ferreting out evidence of guilt for transmittal to the executive officers would be barred by the Federal Constitution. No provision of that instrument stands in the way. Nor do we understand appellants to say there is. The federal attack under the present point is based on the due process clause, and the result does not turn upon whether the agency is characterized as "legislative" or "executive" or both. Rather the question is whether the agency, whatever its classic nature in the context of separation of powers, has an accusatory role, and if so, whether individual rights pertinent to an accusatory function have been denied. As to this, the answer is that the role of the S.C.I. is not accusatory and the rights accorded the individuals concerned are appropriate and adequate in the light of the agency's mission and powers. [at 261]
The same result was reached in United States ex rel. Catena v. Elias, 465 F.2d 765, 769-770 (3 Cir.1972), wherein the court held: "Since the Commission has a purely investigative character and purpose, the due process clause does not require the full panoply of judicial procedures in hearings before the Commission." Since it has thus been authoritatively determined that the Commission is not an accusatory body, there is no accused and therefore no spouse of an accused to invoke the marital privilege.
Appellants argue that if the privilege applies to a grand jury proceeding, where no one is formally accused until after the privilege has been invoked, then it should also apply to Commission proceedings. However, the distinction is that the grand jury is the quintessential accusatory body and constitutes one stage in the process of a criminal prosecution. Therefore, it is clearly a part of a criminal action. While the Commission may *71 uncover evidence which it is obliged to turn over to the Attorney General for possible criminal prosecution, its proceedings can in no way be considered a step in the course of a criminal prosecution. The commonsense meaning of criminal action refers to any stage from the institution of charges to a final determination of guilt or innocence; the privilege would certainly apply at any stage where testimony was required. Although allowing one spouse to testify against the other before the commission may affect the marriage relationship, a concern which is the basis for the marital privilege, the courts should not extend the privilege beyond the limits contained in the language of the rule itself. See Crevina, 110 N.J. Super. at 576. This is particularly true in view of the court's statement in Briley, 53 N.J. at 506, that the privilege rules should be strictly construed so that incompetency of a witness is the exception rather than the rule. Since by its language the rule applies only in a criminal action which calls for the testimony of the spouse, we conclude that Judge Lenox correctly concluded that proceedings before the commission do not qualify as such an action, and therefore the privilege may not be invoked therein.
Affirmed.