99 N.J. Super. 249 (1968)
239 A.2d 262
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CHARLES HAGAN AND MARTHA POWELL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1968.
Decided February 16, 1968.
*250 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Lawrence S. Schwartz, Assistant Prosecutor, argued the cause for appellant (Mr. Brendan T. Byrne, Prosecutor of Essex County, attorney; Mr. Richard B. McGlynn, Assistant Prosecutor, of counsel).
There was no appearance and no brief filed on behalf of respondent.
The opinion of the court was delivered by LABRECQUE, J.A.D.
Pursuant to leave granted, plaintiff appeals from an order of the Essex County Court granting the motion of defendant Martha Powell to suppress certain evidence taken from the latter's apartment by a member of the Newark Police Narcotics Squad.
Following the indictment of defendants Charles Hagan and Martha Powell by the Essex County grand jury for violation of R.S. 24:18-4 (illegal possession of marijuana) they moved to suppress certain evidence obtained by the police as the result of a search of the apartment leased by the latter at 382 Dayton Street, Newark. At the hearing on the motion McNulty, the officer who had obtained the evidence (a bag of marijuana), testified that prior to the time he went to the apartment defendants had been arrested and were in custody at East Orange police headquarters for possession of marijuana. When he telephoned there, defendant Hagan told him that there was another pound of marijuana in a bedroom of the apartment and asked him to retrieve it. Hagan told him where in the bedroom it was located and asked him not to *251 tell the children he would find in the apartment that "they" were in custody. He and another detective then proceeded to the apartment where they were admitted by two young girls. When a search failed to yield the bag of marijuana, he phoned Hagan again to tell him that the bedroom bureau, where he had been told it would be found, was bare. Hagan told him to try "looking down along the bureau" and when he did so the bag was found.
Based upon the foregoing testimony, the motion to suppress was denied as to Hagan but granted as to Mrs. Powell, the court concluding that Hagan, "being a guest in the apartment, could not lawfully consent to a search" insofar as she was concerned. When plaintiff moved for leave to appeal we remanded the case to the Essex County Court for the taking of testimony and the submission of findings as to the nature of Hagan's relationship to the searched apartment.
At the hearing on remand McNulty testified that Hagan had requested him to go to the apartment and pick up the marijuana. Hagan told him that he "was living there with Martha Powell; * * * his girlfriend;" said there were children in the apartment and cautioned him, "please don't shake the kids up"; and told him there was a sick child in the bedroom where the marijuana would be found in a brown paper bag on the bureau. Although Hagan did not testify, the Newark police were given a different address for him when he was brought there from East Orange.
The county judge found that at the time of the search Hagan was an "occupant" of the apartment with the permission of codefendant Powell, and concluded that his occupancy partook of "the nature of a tenant at sufferance."
Plaintiff's present appeal is buttressed solely upon its contention that Hagan's status was such that his authorization was sufficient to constitute the search a reasonable one so far as the co-defendant was concerned.
Counsel has submitted no New Jersey case in which the cited issue has been passed upon. In general, the rule is well settled that when a co-owner of premises consents to a *252 search thereof, the fruits of the search are admissible in evidence in a criminal prosecution against his nonconsenting co-owner. This rule has been applied to a defendant's co-owner wife, Roberts v. United States, 332 F.2d 892 (8 Cir. 1964), certiorari denied 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274 (1965); State v. Cairo, 74 R.I. 377, 60 A.2d 841 (Sup. Ct. 1948). The same rule was applied in a case where the mother of a defendant, as owner, gave consent to a search of his room in her home (which he occupied with his brothers). Maxwell v. Stephens, 348 F.2d 325 (8 Cir. 1965), certiorari denied 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965). Compare Reeves v. Warden, Maryland Penitentiary, 346 F.2d 915 (4 Cir. 1965.) The rule applied in Maxwell is to be distinguished from that applicable to the occupant of a room in a boarding house or a guest in a hotel. Stoner v. State of California, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).
An examination of the authorities in other jurisdictions reveals a number of cases in which the capacity to consent to search has, under special circumstances, been extended to those who, while not possessing legal co-ownership status, exhibit a de facto control over the premises which is coextensive with that of the true owner. Thus, in Drummond v. United States, 350 F.2d 983 (8 Cir. 1965), certiorari denied Castaldi v. United States, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966), defendant had rented a garage outbuilding in which he carried on a counterfeiting venture. Some weeks after the letting, his lessor became a participant in the activities being carried out there. The court held that the lessee thereafter did not enjoy exclusive occupancy, hence the lessor could validly consent to a search so as to justify the admission as against the lessee of evidence found in the garage. The court said:
"Although the facts this time are in the reverse, the Supreme Court's refusal to be governed by the `subtle distinctions' of property law, Jones v. United States, supra, p. 266 of 362 U.S. [257], p. 733 of 80 S.Ct. [725, 4 L.Ed.2d 697] seems applicable here. The *253 situation certainly is to be viewed realistically and, when so viewed, it discloses, at the time of the garage's search, not a leasehold arrangement but a joint enterprise in which Long was a participant. His consent, therefore, makes applicable to the garage the equal authority cases which have been cited above."
In Teasley v. United States, 292 F.2d 460 (9 Cir. 1961), a prosecution for possession of narcotics, access to defendant's apartment was given by defendant's friend and accomplice, who opened the door to permit the officers to enter. Although he had no proprietary interest in the apartment, he had a key to it and had been living there with defendant for a week or ten days prior to the search. The court held:
"In the instant case, the compelling inference is that the officers gained entrance to appellant's apartment from one who was lawfully entitled to enter such apartment and to consent to the entry into the apartment by others. Under these circumstances, the entry into the apartment by the officers was not in the nature of a trespass, nor was such entry in violation of the pertinent provisions of the Fourth Amendment."
More closely resembling the facts in this case were those in Nelson v. People of the State of California, 346 F.2d 73, 75, 77 (9 Cir. 1965), certiorari denied 382 U.S. 964, 86 S.Ct. 452, 15 L.Ed.2d 367 (1966). In that case one Virginia Thomas allowed the police access to defendant's apartment where they observed and seized narcotics which were the subject of his later indictment. Miss Thomas testified that defendant had rented the apartment about two months before his arrest, that she moved in with him at that time, and that she and he were living there "sort of as husband and wife." They continued to live there continuously up until the time of the arrest. In support of his petition for a writ of habeas corpus defendant contended that the search of his apartment and the seizure of the contraband by the police was unlawful. In disposing of this contention the court held:
"We cannot say, as a matter of law, that the search was illegal. * * * It is not disputed that Thomas and Nelson had been living in the apartment `sort of as husband and wife' (Thomas' version), *254 as `man and wife' (Nelson's version), and that Thomas had the keys (Nelson's testimony). The only dispute is as to whether Nelson still lived there when the search was made. If he did, then he and Thomas were joint occupants. If he did not, then Thomas was the sole occupant. In either case, a trier of fact could decide that she had authority to let the officers in, and to permit them to make the search that they did."
Somewhat similar in its factual basis is United States v. Airdo, 380 F.2d 103 (7 Cir. 1967), where defendant, a married man, was living in an apartment with a young woman not his wife. The latter had admitted the federal agents to the apartment and permitted them to examine a television set there. At his subsequent trial for receiving a stolen television set, defendant urged that his Fourth Amendment constitutional rights were violated by the search. In disposing of this contention the court held:
"The defendant's argument that Miss Hilan's consent could not affect his right to be free from unreasonable searches must also be rejected. In United States v. Sferas, supra, [7 Cir.], 210 F.2d [69] at 74, we acknowledge the rule that `where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either.' The rule has been applied by other courts to searches following consent given by the wife of the defendant, e.g. Roberts v. United States, 332 F.2d 892 (8th Cir.1964), cert. denied, 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274 (1965), and by a woman standing in the position of the defendant's wife, Nelson v. People of State of California, 346 F.2d 73, 77 (9th Cir.), cert. denied 382 U.S. 964, 86 S.Ct. 452, 15 L.Ed.2d 367 (1965). The considerations most applicable to the third person's consent in such cases are not related to principles of agency connecting the defendant with the person acquiescing in the search, but rather concern the reasonableness under all the circumstances, of a search consented to by a person having immediate control and authority over the premises or property searched. Cf., Roberts v. United States, supra 332 F.2d at 896-897. Miss Hilan lived in the apartment and therefore had authority to consent to a search of it."
See also People v. Smith, 63 Cal.2d 779, 48 Cal. Rptr. 382, 409 P.2d 222 (Sup. Ct. 1966), certiorari denied 385 U.S. 1042, 87 S.Ct. 779, 17 L.Ed.2d 685 (1967); People v. Silva, 140 Cal. App.2d 791, 295 P.2d 942 (D. Ct. App. 1956).
*255 From our consideration of the foregoing we are satisfied and hold that the evidence compelled a finding that Hagan had de facto control and authority over the premises, such that his express authorization to the police to enter the apartment and retrieve the marijuana which he stated would be found there relieved the resultant search of any condemnation as violative of the Fourth Amendment rights of his co-defendant. The County Court was in error in holding that he could not lawfully consent to a search of the apartment. He was more than a mere guest  as the court aptly determined on remand. His admission that codefendant was his girl friend and that they were living there together; his knowledge of the layout of the apartment, and his anxiety for the security of the children (who were not shown to be his), all bespoke a possessory status by reason of which a search based upon his authorization was not an unreasonable one.
The action of the Essex County Court is accordingly reversed.