159 N.J. Super. 552 (1978)
388 A.2d 993
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD J. MILLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 15, 1978.
Decided May 31, 1978.
*554 Before Judges ALLCORN, HORN and FURMAN.
*555 Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Stephen E. Serbe, designated counsel, of counsel and on the brief).
Mr. John J. Degnan, Attorney General, attorney for respondent (Mr. William F. Hyland, former Attorney General; Mr. Leonard D. Ronco, Acting Essex County Prosecutor, of counsel; Mr. Kenneth P. Ply, Special Deputy Attorney General, of counsel).
PER CURIAM.
Tried to a jury on a five-count indictment charging defendant Edward J. Miller with the murder (first count) of Joseph Hill, contrary to N.J.S.A. 2A:113-1 and 2, and robbery (second count) of said Hill, contrary to N.J.S.A. 2A:141-1, while armed (third count), contrary to N.J.S.A. 2A:151-5, and also the robbery (fourth count) of Jeffrey B. Dunstan, contrary to N.J.S.A. 2A:141-1, while armed (fifth count), contrary to N.J.S.A. 2A:151-5, Miller was found guilty of all said crimes. Following the imposition of sentence, he appealed on three grounds.
The criminal actions of defendant allegedly took place in a photography studio of said Hill at about 5:30 P.M. on January 17, 1975 during which Hill was robbed and murdered, and Dunstan, his assistant, was robbed. Other facts pertinent to the issues raised by defendant will be related in connection therewith.

I
Defendant's first ground of appeal is that his motion to suppress a warrantless search was improperly denied by the judge. During a search of a rooming house in Plainfield, in Room 24, Police Officer Gallagher found a .38-caliber revolver under a rollaway-type bed, and Police Officer Davis found .38-caliber shells in a drawer. In Room 14 Gallagher found a sawed-off shotgun under a mattress. Later the shotgun was identified as having been used in the murder and *556 the robberies, and it was established that a revolver was also used by the two men who perpetrated the crimes.
The police officers had been admitted into the two rooms by Kay Ritchie, who identified herself as the cousin of defendant and the girlfriend of his alleged accomplice, Lloyd Jackson. According to the policemen's testimony, Ritchie also told them that she, defendant and Jackson resided together in both rooms. She accompanied the policemen to the rooming house from the hospital, where she had met them.[1] She unlocked the doors of each of the rooms in admitting them. The State contends that Ritchie gave a valid consent to the search or, alternatively, it was justified by exigent circumstances. Defendant contends that Ritchie could not give consent and there were no exigent circumstances.
The Fourth Amendment proscription of unreasonable searches and seizures prohibits warrantless searches, but is subject to exception when, among other times, a search is conducted pursuant to valid consent, or when there are so-called exigent circumstances. State v. Allen, 113 N.J. Super. 245, 251 (App. Div. 1970). The State bears the burden of proving that circumstances existed justifying a warrantless search. State v. Brown, 132 N.J. Super. 180, 185 (App. Div. 1975).
According to Officer Katcher, Ritchie responded to Detective Davis' request to search by saying, "Yes, you can search it. You know, it is my apartment. I live in both apartments. I have stuff and I have a key to the apartment." She then proceeded to unlock Apartment 24, which was searched and a pistol found. As soon as she went into that apartment she went to the kitchen and took some food from the refrigerator. They then went downstairs to Apartment 14, which she also unlocked. There the shotgun was found.
*557 Defendant contends that the State failed to meet its burden of proof because it never produced Ritchie to testify and never sought defendant's consent despite the fact that he was in police custody.
The issue of the authority of a third person to consent to a search of premises does not often arise. The first case in New Jersey in which the issue arose in a nonmarital context was State v. Hagan, 99 N.J. Super. 249 (App. Div. 1968). There, defendant's boyfriend told police he was living with her, and consented to a search of her apartment which uncovered some marijuana. The consent was held to be valid because the evidence compelled a finding that he had de facto control and authority over the premises. The evidence included "his admission that codefendant was his girl friend and that they were living together; his knowledge of the layout of the apartment, and his anxiety for the security of the children (who were not shown to be his), all bespoke a possessory status by reason of which a search based upon his authorization was not an unreasonable one." Id., at 255. See also, State v. Green, 55 N.J. 13, 17 (1969).
Any doubt that the consent of one who possesses common authority over premises or effects is valid against the absent, nonconsenting person with whom that authority is shared was put to rest in United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The test set forth therein is that a consent is valid if the prosecution can show that
* * * permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.
This test, in turn, relies not upon the law of property,
* * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that others have *558 assumed the risk that one of their number might permit the common area to be searched. [415 U.S. at 169-172, 94 S.Ct. at 993]
In applying the test set forth in Matlock, special significance has been placed on the fact that the consenting person had a key to the premises. Thus, in United States v. Murphy, 506 F.2d 529 (9 Cir.1974), cert. den. 420 U.S. 996, 95 S.Ct. 1433, 43 L.Ed.2d 676 (1975), access to a warehouse where large quantities of stolen goods were found was obtained by an employee with a key. The court stated:
[W]e attribute special significance to the fact that Murphy delivered the key to Tucker. We conclude that Tucker's custody of the key gave him sufficient dominion over the premises to enable him to grant the necessary consent. Since Murphy himself put the premises under the immediate and complete control of Tucker, who voluntarily consented to the search we hold that the search was not unreasonable. [at 530]
See also, United States v. Green, 523 F.2d 968, 970-971 (9 Cir.1975); United States v. Gradowski, 502 F.2d 563 (2 Cir.1974); United States v. Gulma, 563 F.2d 386 (9 Cir.1977).
In the present case Ritchie's possession of keys to both apartments, plus her statement that she lived in both apartments, completely supported the belief that she had "common authority over or other sufficient relationship to the premises" to render her consent valid. Defendant's contention that permission had to be sought of him, based on State v. Johnson, 68 N.J. 349, 354 (1975), is patently wrong. Therein it is stated that in a noncustodial situation, where the State seeks to rely on consent as the basis for a search, it has the burden of demonstrating knowledge on the part of the person involved that he had a choice in the matter. Here the person involved Ritchie, not defendant, and the voluntariness of her consent is not at issue. Moreover, in Hagan and Matlock, both supra, defendant was in custody at the time consent was given by a third party, and *559 neither of those cases, nor any other case, mandates that consent be sought from defendant. As for the failure of the State to produce Ritchie, there was no requirement that it do so. Besides, the testimony at trial was that Ritchie had moved out of the apartment, and attempts to locate her had been unsuccessful.
The State also justified the search on the claim that exigent circumstances existed, namely, as stated by Officer Katcher, the fact that a crime had been committed in which weapons were used (atrocious assault and battery on Allen Jackson); Ritchie was not under arrest, and, if she in fact had knowledge of where the weapons were, she could have disposed of them. Defendant points out that both he and Jackson were in the hospital at that time, but that is not responsive to Katcher's concern about what Ritchie might have done. Assuming that there is probable cause to believe that evidence may be found, exigent circumstances justifying a warrantless search exist when such evidence will likely be lost if police first had to obtain a search warrant. State v. Naturile, 83 N.J. Super. 563 (App. Div. 1964); State v. Helton, 146 N.J. Super. 98, 100 (App. Div. 1975), aff'd o.b. 72 N.J. 169 (1977). As noted in Helton, this exception to the warrant requirement must be applied with caution. Here, Katcher's concern appeared to be well-founded. Because Allen Jackson had identified Lloyd Jackson, with whom Ritchie said she lived, as the person who had assailed him at gunpoint, there was probable cause to believe that a weapon might be found in the apartment.
In sum, the warrantless search in this case was justified by the consent of a person in a position to do so, and also by the presence of exigent circumstances.

II
In his second point defendant argues that all identification evidence should have been excluded by reason of tainted out-of-court identification procedures. We disagree.
*560 Unnecessarily suggestive confrontation procedures which are conducive to irreparable mistaken identification are violative of due process. Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Whether a violation occurred depends upon the totality of circumstances. Id. Stovall dealt with an in-person confrontation between defendant and his victim. But the rule it enunciated was held to apply to photographic identifications in Simmons v. United States, 390 U.S. 377, 382-386, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), where the court held that convictions based on eyewitness identification following a pretrial photographic identification will be set aside "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." At 384, 88 S.Ct. at 971. It might be noted that the court also observed that the danger of misidentification is increased if the police display to the witness "pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized." At 383, 88 S.Ct. at 971.
The factors to be considered in applying the aforementioned test were discussed in Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and include:
* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Application of the rule and test set forth above is well-established in this State. State v. Farrow, 61 N.J. 434 (1972), cert. den. 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed. 2d 602 (1973); State v. Brewer, 142 N.J. Super. 70, 77-80 (App. Div. 1975), aff'd o.b. 70 N.J. 329 (1976). It should be noted that, even if a procedure is unduly suggestive, in-court identification can be allowed if there is sufficient evidence demonstrating an opportunity for independent recollection. *561 State v. Zarinsky, 143 N.J. Super. 35, 58 (App. Div. 1976), aff'd 75 N.J. 101 (1977).
Defendant was identified from photographs in out-of-court procedures by Dunstan, Ms. Williams (who lived with Hill), her son Gerald and daughter Delores. All repeated their identifications in court, after the pretrial hearing, which concluded with the finding that the procedures were not impermissibly suggestive. Also, another Williams son, Anthony, identified defendant in court. A hearing out of the presence of the jury established that he had not been able to identify defendant from any slides or photos, but he did so in person during the hearing.
Defendant contends that none of these individuals had sufficient opportunity to view the perpetrators during the course of the incident. Moreover, he argues that the procedures were tainted by the inclusion of up to four photos of himself among the various arrays.
The evidence clearly shows that most, if not all, witnesses had ample opportunity to view defendant. Dunstan observed the men before he realized that a crime was being committed. Ms. Williams testified that she was face-to-face with defendant. The lighting was very good. The children, too, had a chance to view what transpired. Therefore, even if the procedures were suggestive, there was sufficient evidence establishing their independent recollections.
The procedures followed in the out-of-court identifications were questionable, due to the seemingly unnecessary inclusion of multiple photos of defendant. But, in light of the opportunity for nearly everyone to get a good look at defendant during the course of the affair, the likelihood of misidentification was minimal.

III
Defendant's final point concerns the in-court reference by an officer to "mugshots."
*562 Assuming that the reference carries the connotation that defendant was involved in prior criminal conduct, it was improper. State v. LaPorte, 62 N.J. 312, 318 (1973). As stated recently in State v. Atkins, 151 N.J. Super. 555, 562 (App. Div. 1977), evidence of prior crimes may be logically relevant, but the danger is that it may weigh too heavily with the jury and deny defendant fair opportunity to defend himself against a particular charge.
Nevertheless, the error in this case was harmless. The reference was solitary and fleeting. Moreover, the judge properly cautioned the jury, in the course of the charge, not to consider the fact that defendant's picture was in police custody as evidence against him, noting a number of innocuous methods by which police can obtain an individual's photo. Thus, the single error was harmless.
For the foregoing reasons the convictions are affirmed.
NOTES
[1] The police had gone to the hospital to interview Allen Jackson who had been beaten and robbed at gunpoint, allegedly by Lloyd Jackson, in an unrelated incident.