456 A.2d 1055

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Christopher VAN JORDAN.**

Superior Court of Pennsylvania.

Argued May 26, 1982.

Filed Feb. 18, 1983.

Petition for Allowance of Appeal Denied May 12, 1983.

518

Ronald Thomas Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellant.

Arthur L. Jenkins, Jr., Norristown, for appellee.

Before BROSKY, WIEAND and BECK, JJ.

BECK, Judge:

In this case the Commonwealth is appealing the suppression of evidence against appellee Christopher Van Jordan. Since the effect of the lower court's order to suppress is to preclude the Commonwealth from proceeding in its case against Van Jordan, our Court has jurisdiction. *Com. v. McCabe*, 303 Pa.Super. 245, 449 A.2d 670 (1982).

The facts are all concerned with events that occurred on September 5, 1980, in Towamencin Township, Montgomery County. The township police were responding to a request from Dr. Charles Rossow of New Brunswick, New Jersey, to attempt to locate his daughter, Kathy Rossow, who had been missing for several days. Dr. Rossow provided the police with a description of his daughter's automobile to aid them in their search.

On September 5, police officer Stuart T. Newman received a report on a theft of a pillowcase from the night clerk of the Budget Valley Motor Lodge. Kathy Rossow was staying at the motel and had left a credit card belonging to her father as security. The night clerk also informed the police officer that there were numerous telephone calls being placed between the Rossow room and room # 328 of the local Holiday Inn, across the street from the Budget Valley Motor Lodge. Newman then spotted the Rossow automobile in the parking lot of the Holiday Inn.

When a man and a woman (not fitting Kathy Rossow's description) left the Holiday Inn and entered the car, Newman followed them and stopped the car after it had gone a short way. The driver of the car was Van Jordan, who identified himself, acknowledged that he knew the police were looking for Kathy Rossow, and told Newman that she was in his room, # 328, at the Holiday Inn. When Van Jordan was asked if anyone else was in room # 328 he answered "Yes, Sam" (R. 17a–19a).

Van Jordan drove on his way and Newman reached the clerk at the Holiday Inn and instructed him not to pass any calls through to room # 328, lest Van Jordan alert Kathy Rossow that the police were on the way. Newman and another police officer then returned to the Holiday Inn and went to room # 328, accompanied by the night clerk. They knocked, heard a male voice say "I'll be there in a minute" and heard water running in the bathroom. About thirty seconds later the door was opened by a one-legged man on crutches, with a towel wrapped around his waist, later identified as Samuel T. Feldi, since deceased (R. 19a–20a). The officers announced that their purpose was to locate

Kathy Rossow. Feldi told them that she was in bed, and admitted them to the room.

Upon entering the room, Newman observed an automatic weapon and drug paraphernalia in plain view. Miss Rossow was in bed, and another man, Douglas Sharp, was seated on the sofa. Newman instructed Rossow and Feldi to get dressed, and Rossow asked to use the bathroom. Before permitting her to enter, Newman searched the bathroom and found another automatic pistol, $540 in cash, and glassine bags of a substance which later analysis proved to be Methamphetamine ("speed"). The three occupants were then placed under arrest and ordered to sit on the sofa. The police then proceeded to search the entire room, including Van Jordan's closed suitcase, which was found to contain leather used to make the holster in which one of the weapons was found, a portable scale, and a photo of Van Jordan holding a bag containing powder.

Van Jordan returned to the motel room and he, too, was placed under arrest. A search of his person incidental to the arrest produced a knife and a Quaalude tablet. Jordan was charged with Violation of the Controlled Substance, Drug, Device and Cosmetic Act[1], Violation of the Uniform Firearms Act[2], Possession of Instruments of Crime[3], and Criminal Conspiracy[4].

Van Jordan successfully challenged the warrantless entry of the motel room, which was rented in his name, as a violation of his rights under the Fourth Amendment. The lower court granted his Motion to Suppress all the evidence against him which was seized. The Commonwealth, on appeal, raises two issues: the validity of the entry of the police into the motel room on the basis of Feldi's consent, and the constitutionality of the search of the suitcase as a search incident to arrest.

1. 35 Pa.C.S.A. § 780–113 (a) (30).

2. 18 Pa.C.S.A. § 6106.

3. 18 Pa.C.S.A. § 907.

4. 18 Pa.C.S.A. § 903.

The issue of the validity of third party consent to entry of premises shared with another person was addressed by the United States Supreme Court in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In an opinion expressing the views of six members of the Court, a consensual entry to Matlock's room, given by a woman who shared his bedroom, was upheld. The Court looked back to other cases in which consensual searches were in issue. In *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), the Court permitted Cupp's consent to a search of Frazier's duffel bag, which Frazier had allowed Cupp to use. Frazier was held to have assumed the risk that the joint-user of the duffel bag would allow someone else to look inside. In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) the Court explored the nature of consent in general, which may be either voluntary or coerced, a factual determination to be made on the basis of the totality of the circumstances. After reviewing these landmark decisions, the *Matlock* Court concluded:

"These cases at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."

In an important footnote, the concept of common authority was explored:

7. Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (night

hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

The primary justification of third party consent is that there is a reduced expectation of privacy in premises or things shared with another, and when one leaves something with another person, one assumes the risk that it may find its way to the police.[5] *Matlock* establishes the rule that third party consent is valid against an absent, non-assenting party when the party giving consent has "common authority" over the property.

We disagree with the lower court's interpretation that the *Matlock* test excludes Feldi's consent to entry because he did not have "co-equal dominion over the room rented by Van Jordan" (Opinion, p. 10). We believe that Feldi's use of the room and bath to shower and change his clothes, and Van Jordan's acknowledgement that Kathy Rossow was in his room "with Sam" confirm Feldi as a legitimate co-tenant of the motel room, constitutionally able to allow the police to enter.

Our understanding of *Matlock* is confirmed by other cases decided subsequent to it, particularly *United States v. Gulma*, 563 F.2d 386 (9th Cir.1977), upholding a consent to a hotel room search by one who had possession of the keys, although the person who gave the consent had never entered the room, and *State v. Miller*, 159 N.J.Super. 552, 388 A.2d 993 (1978), rejecting a defendant's challenge to a consent given by a co-occupant of a room in a rooming-house. The *Miller* court held that it was unnecessary for the state to call as witness the woman who gave the consent, for the state's attempts to locate her had been

---

5. Hall, *Search and Seizure* (1982), §§ 4.26 *et seq.*, Ringel, *Search and Seizure*, 2d ed. (1981), §§ 9.5 *et seq.*

unsuccessful, a factual situation similar to the one at bar, where the consenting party has since died.

Our Court has quite recently held that a defendant's mother could lawfully consent to the search of the defendant's room by the police. In general, to have a reasonable expectation of privacy one must intend to exclude others and must exhibit that intent. *Com. v. Lowery*, 305 Pa.Super. 66, 451 A.2d 245 (1982). Van Jordan clearly made no attempt to exclude others from his room, and his expectation of privacy was thereby diminished. It is therefore irrelevant that Van Jordan did not explicitly consent to an entry during his conversation with Newman during the auto stop. We hold that the consent to entry which the police received from the co-occupant of the motel room did not violate Van Jordan's Fourth Amendment rights.

We turn now to the second issue raised by the Commonwealth, the right to search Van Jordan's suitcase and seize the contents. Van Jordan, who successfully maintained that the seizure of the suitcase was unconstitutional, challenges the right of the Commonwealth to raise this issue on appeal. He argues that the Commonwealth did not challenge the suppression order with regard to the suitcase, and therefore it is not in a posture to litigate the question now on appeal.

Pa.R.A.P. 1925 provides:

**(b) Direction to file statement or matters complained of.** If the lower court is uncertain as to the basis for the appeal, the lower court may direct the appellant forthwith to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on the appeal. A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of.

Appellant's Statement of Matters Complained of on Appeal reads, "The trial court erred in suppressing the evidence in this case because, under the circumstances of the case, appellee's guest, who permitted the police to enter the

motel room, gave a valid third party consent so as to abrogate the necessity for the warrant requirement under the Fourth Amendment" (R: Concise Statement Of Matters Complained of).

Our Court held in *Com. v. Crowley*, 259 Pa.Super. 204, 393 A.2d 789 (1978) that Rule 1925(b) gives the appellate court discretion in deciding whether or not to hear an issue on appeal when it has not been specifically incorporated into the Statement of Matters Complained of. The policy, as explained in *Crowley*, is to exercise our discretion to allow the appeal in those instances in which the failure does not defeat or interfere with the ability to exercise appellate review. In several instances we have found that technical defects in the 1925(b) statement were not impediments to adequate appellate review. We have chosen to allow the appeal when the issue omitted is so closely related to a claim incorporated in the 1925(b) statement that our review could proceed without impairment, as in *Com. v. Broomell*, 254 Pa.Super. 574, 386 A.2d 99 (1978), or because there is adequate testimony on the issue, as in *Com. v. Williams*, 269 Pa.Super. 544, 410 A.2d 835 (1979), and in *Com. v. Monroe*, 281 Pa.Super. 328, 422 A.2d 193 (1980). See also *Com. v. Yohn*, 271 Pa.Super. 537, 414 A.2d 383 (1979).

We here exercise our discretion to review the issue of Van Jordan's suitcase for two reasons. First, there is considerable testimony on the suitcase seizure in the suppression hearing (R. 69a–75a). During this testimony the trial court asked several questions to sharpen the focus of the suppression inquiry. We therefore have, as in *Williams* and *Monroe*, a sufficient record to review. Second, appellant's 1925(b) statement impliedly includes the issue of the suitcase in that it asserts that "The trial court erred in suppressing the evidence in this case. . . ." The suitcase is part of the evidence. Since we have held that the entry to the motel room was lawful, we can now proceed to examine the issue that flows from that holding, namely, the validity of the seizure of the suitcase.

The Commonwealth argues that the suitcase was seized following the lawful arrest of Rossow, Sharp, and Feldi,

and that the seizure is justified because the suitcase was within the arrestees' area of control. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). At the time of the arrest, there were two officers in the room and three arrestees on the sofa. The outnumbered police feared that one of the arrestees might get hold of the suitcase either to obtain a weapon (for two had already been found on the premises) or to destroy evidence.

Appellee, who contests the appealability of the suitcase issue, nevertheless states that its seizure was unconstitutional on the basis of *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). We do not agree. *Chadwick* concerned a footlocker seized from the trunk of an automobile which was under the exclusive control of police for an hour and a half before it was opened and searched. *Sanders* was also concerned with a suitcase taken by authorities from the trunk of a taxi, in which the defendant was a passenger. *Sanders* ruled that absent exigent circumstances, a warrant is required for search of luggage taken from a stopped automobile into the exclusive custody of police.

*Sanders* left open the question of luggage searched incident to arrest, within the area of control of the arrestee at the time of the search. Footnote 11 of the opinion reads:

> 11. There may be cases in which the special exigencies of the situation would justify the warrantless search of a suitcase. Cf. *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (police had reason to suspect automobile trunk contained a weapon). Generally, however, such exigencies will depend upon the probable contents of the luggage and the suspect's access to those contents—not upon whether the luggage is taken from an automobile. In the present case the State has conceded that there were no special exigencies.

In general, luggage taken incident to a lawful arrest has been held validly seized, so long as it is contemporaneous with the arrest and within the area of control of the

arrestee. *United States v. Garcia,* 605 F.2d 349 (7th Cir. 1979). When the search is immediate, several courts have upheld search of closed containers within the arrestee's area of control: *United States v. Eatherton,* 519 F.2d 603 (1st Cir.1975), cert. denied 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975) (brief case), *United States v. Pugh,* 566 F.2d 626 (8th Cir.1977), cert. denied 435 U.S. 1010, 98 S.Ct. 1885, 56 L.Ed.2d 397 (1978) (brief case). In *United States v. Mason,* 523 F.2d 1122 (D.C.Cir.1975), a search of a suitcase in a closet, when the arrestee had already been handcuffed, was upheld.

█ Our Supreme Court has ruled that the test is whether the arresting officer reasonably believed the arrestee might obtain weapons or evidence in the container. *Com. v. Bess,* 476 Pa. 364, 382 A.2d 1212 (1978). In the facts of this case, given that the motel room and bath contained weapons and contraband, that the suitcase was on the floor of the motel room not far from where the three arrestees were being detained, and that the search and seizure followed immediately after the arrest, we hold that the suitcase was constitutionally searched, and its contents may therefore be introduced into evidence.

The order of the lower court is reversed.