**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1338-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

C.J.R.,[1]

    Defendant-Appellant.

_____

Argued telephonically September 22, 2020 —
Decided September 30, 2020

Before Judges Yannotti, Haas, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 15-09-0780.

Whitney F. Flanagan, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Whitney F. Flanagan, of counsel and on the brief).

Andre A. Araujo, Assistant Prosecutor, argued the cause for respondent (Jennifer Webb-McRae,

_____

[1] We use initials to protect the identities of the minor victims. R. 1:38-3(c)(9).

Cumberland County Prosecutor, attorney; Andre A. Araujo, of counsel and on the brief).

PER CURIAM

Defendant C.J.R. appeals from a December 18, 2017 order denying various pre-trial motions and also challenges his sentence following his guilty plea to two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1).  We affirm.

Defendant's father and stepmother adopted two young children, K.R. and C.R.  In October 2013, they contacted police and reported both girls disclosed defendant sexually abused them in the family home, at the family's vacation residence, and in defendant's Maryland home.  Investigators interviewed the girls the same day, who both reported multiple instances of sexual abuse starting as early as seven years of age.  Defendant was arrested on November 1, 2013, and charged with multiple counts of aggravated sexual assault, sexual assault, and endangering the welfare of a child.

The investigation revealed defendant digitally penetrated both girls on numerous occasions and exposed his penis to them.  Investigators determined the timing of some of the offenses against C.R. occurred between May 25 and September 30, 2007; the abuse in the vacation residence occurred between May 25 and August 31, 2009; and the sexual penetration occurred at the family home

between May 25 and September 30, 2011. The abuse against K.R. occurred between September 28, 2008 and September 27, 2009 in the family home, and at the vacation residence between May 25, 2011 and August 31, 2012.

Following the initial charges, investigators interviewed the girls again. Both disclosed that defendant also committed acts of vaginal penetration with his penis. C.R. recalled that while she, K.R., defendant, and defendant's wife were in a swimming pool together, defendant slipped off her bathing suit bottom on the far side of the pool, and vaginally penetrated her with his penis. K.R. stated while she was sleeping on the living room couch, defendant removed her clothes and engaged in vaginal penetration with his penis and only stopped when K.R. insisted she had to use the bathroom.

Defendant's stepmother discovered footage of both girls in various stages of undress on defendant's digital camera, which she turned over to police who obtained search warrants for the device. Pursuant to the search, police found footage of the girls in their bathing suits and multiple shots of their vaginal areas from an underwater camera. Investigators also recovered separate footage of the girls in an outdoor shower stall at the vacation home, recorded on a hidden camera.

A-1338-18T4

Investigators recovered a computer belonging to defendant from his aunt's home. The laptop was in the possession of defendant's wife, who was living with the aunt after defendant's arrest. The aunt consented to the search of her home. Defendant's wife also did not object to the search and led investigators into the bedroom where she was staying to retrieve the laptop. Pursuant to a search warrant, the laptop was sent to the New Jersey State Police Regional Computer Forensic Laboratory to secure the data on the device.[2]

On January 15, 2014, defendant's stepmother contacted investigators and informed them C.R. disclosed defendant may have filmed or photographed her on his iPhone. Investigators contacted the Cumberland County Jail and confirmed an iPhone was inventoried and stored in the jail at the time of defendant's detention, obtained a search warrant for the locker containing defendant's property, and seized the phone.

On February 10, 2014, defendant's parents obtained defendant's Apple time capsule (an external hard drive) from his wife, which contained disturbing videos of him and C.R. that was subsequently seized by police. Investigators were unable to search the time capsule and sent it to the State Police laboratory

---

[2] Another laptop belonging to defendant was also seized from the family residence and forwarded for forensic analysis.

for examination on November 13, 2014. Due to difficulties accessing the data on defendant's laptop, its hard drive was sent to the Federal Bureau of Investigation (FBI) Computer Imaging Center in Quantico, Virginia on June 12, 2014. The FBI did not return the hard drive until November 25, 2014.

On September 3, 2014, the State presented its evidence to a grand jury, which indicted defendant on twelve counts, including: four counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(4); and five counts of third-degree endangering the welfare of a minor, N.J.S.A. 2C:24-4(a). Defendant was arraigned on October 27, 2014. Two weeks prior to the arraignment, defendant's wife left the country for the Philippines and, according to defendant, thereafter, traveled to Saudi Arabia for employment purposes. She was not interviewed by defense counsel.

A status conference was held on December 1, 2014. Defense counsel was apprised discovery was available for review at the Cumberland County Prosecutor's Office, and if the case was not resolved prior to the receipt of the forensic analysis of defendant's devices, additional charges could be filed.

A-1338-18T4

Defense counsel postponed the conference request due to incomplete discovery. A January 20, 2015 status conference was also postponed for the same reason.

The State Police laboratory completed its analysis of a laptop and the time capsule on January 21 and February 9, 2015, respectively. Another status conference, scheduled for February 26, 2015, was postponed at defense counsel's request due to incomplete discovery. On March 4, 2015, investigators reviewed defendant's time capsule and laptop which revealed additional images of child pornography. Defendant's father and stepmother identified the children in the images as C.R. and K.R. As a result, on March 17, 2015, defendant was charged with additional offenses.

Over the following six months, the defense postponed seven status conferences and a bail motion due to incomplete discovery and attorney availability. Defendant's first attorney was unavailable because of medical leave and defendant was assigned a second attorney on a temporary basis.

On September 2, 2015, a grand jury returned a superseding indictment charging defendant with five additional counts of second-degree endangering the welfare of a child. Defendant was arraigned on October 19, 2015. However, the proceeding was postponed by defense counsel for incomplete discovery, and the arraignment was ultimately completed by December 7, 2015. Two months

later, defendant's counsel was re-assigned, and a third attorney was assigned to represent defendant. Over the course of the following four months, status hearings were postponed at the defense's request on six occasions either due to attorney unavailability or incomplete discovery. Defendant was then assigned a fourth defense attorney who postponed status hearings between April 29, 2016 and August 29, 2016, due to incomplete discovery. The status hearing was finally completed on October 24, 2016.

A pretrial conference scheduled for December 12, 2016, was postponed by defense counsel for incomplete discovery before the case was transferred to a fifth defense attorney. Defense counsel also postponed pretrial conferences scheduled for May 15, July 24, September 19, and October 27, 2017.

The defense then filed the motions to sever, suppress, and dismiss, which the trial judge heard on December 8 and 18, 2017. The defense argued the court should : 1) grant the motion for severance because a trial involving both victims would prejudice defendant and outweighed the State's desire to resolve the matter efficiently; 2) dismiss the indictment because the delay in the case violated defendant's Sixth Amendment right to a speedy trial; and 3) suppress

the evidence seized from the laptop found at the aunt's house because it was obtained illegally.[3]

In a comprehensive oral opinion, the trial judge denied the motions. Applying the Barker v. Wingo[4] factors, he found that despite the four years between arrest and the motion to dismiss, the majority of the delays were at the request of the defense and thus there was no speedy trial violation. Weighing the Cofield[5] factors, the judge denied the severance motion finding there was "undoubtedly a sufficient nexus between the counts of the [i]ndictment relating to [C.R.] and the counts of the [i]ndictment relating to K.R. . . . ." He also found the laptop was legally seized from defendant's aunt's house because, as the homeowner, she consented to the search and defendant's wife did not object.

On February 12, 2018, defendant pled guilty to two counts of first-degree aggravated sexual assault pursuant to a negotiated plea agreement. The State recommended concurrent sentences, each between fifteen and twenty years,

---

[3] In addition to the laptop from the aunt's house, the suppression motion sought to bar the evidence seized from defendant's underwater camera, the SD memory card associated with the underwater camera, the Apple time capsule, the iPhone, and the laptop seized from the family residence, which are not part of this appeal.

[4] 407 U.S. 514, 530-31 (1972).

[5] 127 N.J. 328, 338 (1992).

subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On September 14, 2018, the trial judge sentenced defendant to an aggregate term of eighteen years in prison, subject to NERA, Megan's Law, and parole supervision for life.

Defendant raises the following points on appeal:

> POINT I - THE INDICTMENT MUST BE DISMISSED BECAUSE THE FOUR-YEAR DELAY BETWEEN [DEFENDANT]'S ARREST AND CONVICTION VIOLATED HIS RIGHT TO A SPEEDY TRIAL.
>
> > A. FACTOR ONE: LENGTH OF DELAY.
> >
> > B. FACTOR TWO: REASON FOR DELAY.
> >
> > C. FACTOR THREE: ASSERTION OF THE RIGHT.
> >
> > D. FACTOR FOUR: PREJUDICE TO THE DEFENDANT.
>
> POINT II - THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE POLICE SEIZED [DEFENDANT]'S LAPTOP WI[TH]OUT A WARRANT OR VALID CONSENT.
>
> POINT III - THE COURT ERRED IN DENYING [DEFENDANT]'S MOTION TO SEVER SEXUAL OFFENSES AGAINST TWO DIFFERENT COMPLAINANTS WHEN IT COULD NOT ARTICULATE ANY RELEVANCE OF ONE OFFENSE TO THE OTHER.

POINT IV – [DEFENDANT]'S SENTENCE OF EIGHTEEN YEARS' STATE PRISON IS MANIFESTLY EXCESSIVE.

I.

Defendant argues the trial judge erred in failing to dismiss the indictment because the four-year delay between his arrest and conviction violated his right to a speedy trial.  We analyze speedy trial issues under an abuse of discretion standard.  State v. Fulford, 349 N.J. Super. 183, 195-96 (App. Div. 2002).

The Sixth Amendment and Fourteenth Amendment Due Process Clauses guarantee the accused the right to a speedy trial.  U.S. Const. amends VI, XIV; N.J. Const. art. I ¶ 10; Barker, 407 U.S. at 515; State v. Szima, 70 N.J. 196, 200-01 (1976).  The speedy trial right attaches at the time of arrest or indictment.  Szima, 70 N.J. at 199-200.  Defendant bears the burden of establishing a violation of his speedy trial right.  State v. Tsetsekas, 411 N.J. Super. 1, 9 (App. Div. 2009).

The trial court must balance the following factors: 1) the length of the delay; 2) the reasons for the delay; 3) whether and how defendant asserted his speedy-trial right; and 4) the prejudice to defendant caused by the delay.  State v. Townsend, 186 N.J. 473, 487 (2006); see also Barker, 407 U.S. at 530.  If the factors are met, dismissal of the indictment is the remedy.  Strunk v. United

States, 412 U.S. 434, 438 (1973).  However, "if delay is attributable to the defendant," then he may be deemed to have waived his right.  Barker, 407 U.S. at 529.

The trial judge found the delay was caused in part by the fact defendant was assigned five different attorneys, "through no fault of his own."  The judge also found other causes for the delay, namely, the evidence required complex forensic evaluation by the State Police laboratory and the FBI, which he noted were completed in a "timely fashion"; the discovery of additional evidence through the forensic evaluation resulting in a superseding indictment; and defendant was charged with "very significant crimes, which allows for a lengthier delay."

However, the judge found the primary reason for the delay was defense counsel's postponement of twenty-five of the thirty-three status conferences due to incomplete discovery or attorney unavailability.  The judge noted the defense was advised additional delays would result in a superseding indictment, which in fact created more delays.  The judge acknowledged the delay had a prejudicial effect because the memories of C.R. and K.R., who were young when the assaults took place, could fade with time.  Ultimately, the judge concluded the

complexity of the case and the defense requests for postponements were not unreasonable and did not violate defendant's right to a speedy trial.

The trial judge's findings are supported by the substantial credible evidence in the record. Our review of the record confirms the delay was indeed occasioned by multiple defense requests for more time to address discovery and the complexity of the case. Regarding the latter, the record supports the judge's finding the State worked diligently to gather and examine the evidence. Given the circumstances, the length of and reasons for the delay were not unreasonable and outweigh the prejudice to defendant.

## II.

Defendant argues the judge erred in denying the motion to suppress the evidence obtained from the warrantless seizure of his laptop. We will uphold the denial of a suppression motion where "the factual findings underlying the trial court's decision . . . are 'supported by sufficient credible evidence in the record.'" State v. Sencion, 454 N.J. Super. 25, 31 (App. Div. 2018) (quoting State v. Boone, 232 N.J. 417, 425-26 (2017)).

The New Jersey and United States constitutions protect against unreasonable searches and guarantee the right of individuals to be secure in their house and effects, free from unreasonable searches and seizures. U.S. Const.,

12

amends. IV, XIV; <u>N.J. Const.</u>, art. I ¶ 7.  Warrantless searches are presumed invalid, except under a few, well-delineated exceptions.  <u>State v. Pineiro</u>, 181 N.J. 13, 19 (2004); <u>see also</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219 (1973); <u>State v. Wilson</u>, 178 N.J. 7, 12 (2003).  One exception is where there is consent.  <u>Pineiro</u>, 181 N.J. at 19 (citing <u>State v. Maryland</u>, 167 N.J. 471, 482 (2001)).  "[A]ny consent given by an individual to a police officer to conduct a warrantless search must be given knowingly and voluntarily."  <u>State v. Carty</u>, 170 N.J. 632, 639 (2002) (citing <u>State v. Johnson</u>, 68 N.J. 349, 354 (1975)).

In the context of a residential search, consent may be given by a third-party with lawful authority over the premises or objects to be searched.  <u>United States v. Matlock</u>, 415 U.S. 164, 170 (1974).  The third-party may be a co-occupant of the premises.  <u>Id.</u> at 171.  In determining the validity of a third-party's consent, the court considers if the individual "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."  <u>State v. Miller</u>, 159 N.J. Super. 552, 557 (App. Div. 1978) (quoting <u>Matlock</u>, 415 U.S. at 169-72).  The authority of the third-party

> relies not upon the law of property, 'but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-habitants has the right to permit the inspection in his [or her] own right and that others have assumed the risk that one of

their number might permit the common area to be searched.

[Id. at 557-58 (quoting Matlock, 415 U.S. at 169-72).]

See also State v. Coles, 218 N.J. 322, 340-41 (2014) (holding that evidence seized wherein a third-party only had apparent authority need not be suppressed under the New Jersey Constitution because the query is not whether the officer was factually correct about the third-party's ability to consent to the search, but rather "whether the officer's belief that the third[-]party had the authority to consent was objectively reasonable in view of the facts and circumstances known at the time of the search.").

Defendant's laptop was seized from a residence owned and occupied by his aunt and her spouse. As the judge noted, defendant's wife began residing with the aunt after his arrest as a "temporary guest . . . because she . . . [later] left the State and the country[,]" and did not own the residence or pay rent. Defendant never resided in his aunt's home. The judge concluded defendant's aunt

> as the owner and occupant of the residence, clearly had the authority to consent to [the] search of her residence. . . . Defendant's wife, who transported . . . [d]efendant's laptop . . . to the residence . . . where she was staying, was there.

. . . I have no information before me that indicated that she objected to the seizure of that item and, in fact, both she and the owner of the premises took . . . law enforcement to the location where it was being stored.

. . . [Defendant's wife] could have objected had she wanted to. She did not.

We discern no error in the decision to deny the suppression motion. The aunt had actual authority regarding the residence which she owned and occupied and there is no question she voluntarily consented to the search. Defendant's wife also had authority regarding the laptop because she transported it from her family residence to the aunt's home during her stay. She did not object to the search, and the record shows she voluntarily consented by guiding investigators to the laptop and surrendering it. Therefore, under either an actual or apparent authority analysis, investigators could reasonably rely on the consent both women provided to seize the laptop without a warrant.

III.

Defendant argues the motion judge erroneously denied his motion to sever the trial of the charges involving each victim from the other. "The trial court is vested with the discretion to sever any count in an indictment, if joinder would unfairly prejudice a defendant or the State." State v. Silva, 378 N.J. Super. 321, 324 (App. Div. 2005) (citing R. 3:15-2(b)). The denial of such motion "will not

result in reversal, absent an abuse of discretion."  State v. Cole, 154 N.J. Super. 138, 143 (App. Div. 1977) (citing State v. Yormark, 117 N.J. Super. 315, 331 (App. Div. 1971)).

Pursuant of to Rule 3:7-6, two or more offenses may be charged in the same indictment or accusation if they "are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan."  If the joinder of offenses prejudices a defendant, the court may order separate trials or counts, or direct other appropriate relief.  R. 3:15-2(b).  However, when the offenses charged are the same or similar, based on the same transactions, or of a common plan or scheme, joint trials are preferable in the interest of judicial economy, to avoid inconsistent verdicts, and allow for a "more accurate assessment of relative culpability."  State v. Weaver, 219 N.J. 131, 148 (2014) (quoting State v. Brown, 118 N.J. 595, 605 (1990)).

The trial judge should consider whether if the charges were tried separately the evidence of the offenses sought to be severed would be admissible under N.J.R.E. 404(b) in the trial of the remaining charges.  State v. Alfano, 305 N.J. Super. 178, 191 (App. Div. 1997).  Joinder is permitted if there is a

connection between the charges, such that evidence on one charge would be probative of another.  State v. Sterling, 215 N.J. 65, 91-92 (2013).

In denying defendant's motion, the trial judge concluded "[t]here is undoubtedly a sufficient nexus between the counts of the [i]ndictment relating to C.R. and the counts of the [i]ndictment relating to K.R."  The judge found the evidence of the offenses against one child materially relevant to whether defendant sexually assaulted the other child because: 1) the victims share the same relation to defendant; 2) the assaults took place within the same time period and locations, and were similar in nature; 3) evidence from the separate assaults would be admissible in separate trials; and 4) "[m]any of the images, which were seized . . . from the devices include both victims and it would be impossible to redact those images to introduce evidence that only one victim was sexually assaulted, with[out] at least acknowledging the fact there was a second victim."

The judge concluded "[p]rejudice to the [d]efendant can't be avoided . . . . But joinder of the counts against C.R. and counts against K.R. . . . will not divert the minds of the jurors from a reasonable and fair evaluation of the basic issues of the case."  The judge concluded the court could mitigate any prejudice by means of limiting instructions to the jury to consider each count separately.

We agree. Defendant's assaults, the victims' identities, and the evidence are substantially intertwined. The overlap of facts and evidence would be admissible at both trials, and defendant would not suffer more prejudice in a joint trial than he would in separate trials. State v. Chenique-Puey, 145 N.J. 334, 341 (1996). The judge did not abuse his discretion in denying the severance motion.

IV.

Defendant argues his sentence is excessive. He contends the judge failed to find a mitigating factor, N.J.S.A. 2C:44-1(b)(11), and double-counted an aggravating factor, N.J.S.A. 2C:44-1(a)(3). Defendant argues the judge failed to consider that he is a veteran, had no prior criminal history, and would not re-offend. He claims the sentence disregards the hardship to him and his family whom he can no longer support evidenced by the fact his wife was forced to travel abroad in search of work.

We review an appeal from a sentence for an abuse of discretion. State v. Jones, 232 N.J. 308, 318 (2018). We must consider whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record;' [and] (3) 'the application of guidelines to the facts' of the case 'shock[s] the judicial

conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

The trial judge found the following aggravating factors: N.J.S.A. 2C:44-1(a)(1), the nature and circumstance of the offense; N.J.S.A. 2C:44-1(a)(3), the risk of reoffending; and N.J.S.A. 2C:44-1(a)(9), the need to deter. The judge gave moderate weight to all of the factors and declined to find N.J.S.A. 2C:44-1(a)(2) as an aggravating factor in order to avoid double counting an element of the offense he relied upon to find N.J.S.A. 2C:44-1(a)(1).[6]

Regarding N.J.S.A. 2C:44-1(a)(3), the judge noted this was defendant's first conviction, however because

> [d]efendant's behavior [occurred] over the course of years, with two separate victims, leads this [c]ourt to believe that there is a risk of reoffending.
>
> The nature of the offense itself carries a substantial risk of recidivism and his behavior was found to be repetitive by the doctor at [the Adult Diagnostic Treatment Center (ADTC)].
>
> Not only did he perform physical acts of sexual assault but the evidence establishes that he surreptitiously videotaped the victims in the nude and saved them either on a computer or on a camera, either for future gratification or for further dissemination.

---

[6] The judge also declined the State's request to find N.J.S.A. 2C:44-1(a)(6), the extent of defendant's prior record and the seriousness of the offenses of which he has been convicted as an aggravating factor.

> His denial of the events in the [p]re-[s]entence [r]eport
> . . . also supports a finding, historically and statistically,
> that there is a risk of reoffending.

The judge found the following mitigating factors: N.J.S.A. 2C:44-1(b)(7), lack of a prior criminal history; and N.J.S.A. 2C:44-1(b)(12), defendant's cooperation in sparing the victims from a trial by entering into the plea. The judge refused to find mitigating factor N.J.S.A. 2C:44-1(b)(11).

The judge noted the sentencing range for defendant's crimes was between ten and twenty years for each offense. Because the aggravating factors outweighed the mitigating, the judge sentenced defendant to two eighteen-year sentences to run concurrently with each other, subject to NERA.

We find no reversible error in the sentence. N.J.S.A. 2C:44-1(a)(3) states that "[i]n determining the appropriate sentence to be imposed on a person who has been convicted of an offense, the court shall consider . . . [t]he risk the defendant will commit another offense." Determining the likelihood to reoffend involves an evaluation and judgment of the individual in light of his or her history. See State v. Thomas, 188 N.J. 137, 153 (2006).

Contrary to defendant's contention, the judge did not double count by finding aggravating factors N.J.S.A. 2C:44-1(a)(1) and (3) because the risk of re-offense expressed in the latter aggravating factor is not an element of the

20

aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1). The judge's findings regarding N.J.S.A. 2C:44-1(a)(1) noted "the depravity of the crimes" because defendant "systematically and over the course of several years, sexually assaulted the two victims, . . . when they were seven and eight years of age." The judge found "the acts occurred at the family home and the family summer residence, places certainly where the victims should feel safe." These findings stand separate from the findings the judge made under N.J.S.A. 2C:44-1(a)(3). Moreover, beyond defendant's crimes, the judge considered a multitude of facts, including defendant's lack of remorse and the ADTC evaluation in assessing N.J.S.A. 2C:44-1(a)(3), and we discern no error in the findings.

N.J.S.A. 2C:44-1(b)(11) states the sentencing judge may consider whether the "imprisonment of the defendant would entail excessive hardship to himself or his dependents." "[H]ardship to children may be a significant mitigating factor." State v. Mirakaj, 268 N.J. Super. 48, 51-52 (App. Div. 1993).

The judge declined to find N.J.S.A. 2C:44-1(b)(11) as a mitigating factor noting for "[e]verybody who faces a stiff or a lengthy [s]tate [p]rison term, the families are always inconvenienced and there's always going to be a financial hardship." He concluded the evidence did not support a finding defendant's family was significantly more affected than any other family. The judge noted

defendant's father, not defendant, paid for defendant's family to return to the Philippines, and paid for medical expenses, the mortgage, and personal property so defendant's wife would have sufficient funds to meet the family needs. The judge's findings are supported by the substantial credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1338-18T4